PEOPLE *v.* OLARY.

OPINION OF THE COURT.

1. ANIMALS—CRUELTY—MOTION TO DISMISS.
    Motion to dismiss charge of cruelty to animals for the reason that there was no testimony that defendant did anything to the animals, hence no proof that he was guilty *held*, properly denied, where the record at the close of the people's case did support a finding that defendant was inattentive to existing condition of the animals that required attention (CL 1948, § 752.21).

---

REFERENCES FOR POINTS IN HEADNOTES
[1–4, 6] 4 Am Jur 2d, Animals §§ 27–31.
    What constitutes statutory offense of cruelty to animals. 82 ALR2d 794.
[5] 21 Am Jur 2d, Criminal Law § 17.

2. SAME—CRUELTY—NO REQUIREMENT OF DIRECT PROOF.

Unnecessary cruelty may be inflicted on animals by inattention to their condition; thus, the unnecessary cruelty to animal statute does not require direct proof of such infliction of cruelty (CL 1948, § 752.21).

3. SAME—CRUELTY—RECORD.

Conviction of cruelty to animals *held*, clearly sustained by the record where testimony showed that some of defendant's animals were in an emaciated condition, that some bore the marks of beatings, and that defendant was the owner of the animals, although there was no proof of wilful failure to provide food and drink (CL 1948, § 752.21).

DISSENTING OPINION.

LEVIN, J.

4. ANIMALS—CRUELTY—MEDICAL CARE.

*The owner of an injured animal does not violate the State statute prohibiting cruelty to animals by failing to provide an animal with medical care (CL 1948, § 752.21).*

5. CRIMINAL LAW—CONSTRUCTION OF STATUTES.

*Statutes declaring behavior criminal must be plain and unambiguous.*

6. ANIMALS—CRUELTY—INATTENTION.

*Motion to dismiss charge of cruelty to animals for the reason that there was no testimony that defendant owner did anything to his cows was improperly denied, since failure to destroy sick animals, provide medical treatment or the services of a veterinarian are not crimes under statute (CL 1948, § 752.21).*

Appeal from St. Clair; Miller (Allan C.), J. Submitted Division 2, November 3, 1967, at Lansing. (Docket No. 1,986.) Decided April 2, 1968. Leave to appeal granted September 30, 1968. See 381 Mich 778.

George Olary was convicted of cruelty to animals. Defendant appeals. Affirmed.

*William R. Walsh, Jr.,* for defendant.

Quinn, J. Defendant appeals from his circuit court jury conviction on a charge of cruelty to animals in violation of CL 1948, § 752.21 (Stat Ann 1962 Rev § 28.161) and the sentence imposed following such conviction. Although defendant alleges and argues 11 issues on this appeal, we find that only 2 are properly before us, and one of those is stated in unacceptable form. The remaining 9 issues were not raised below for consideration by the trial court and they are not before us. *People* v. *Willis* (1965), 1 Mich App 428.

At the close of the people's case, defendant moved to dismiss the charge against him for the reason that there was no testimony that defendant did anything to the animals, hence no proof that he was guilty of cruelty toward them. The pertinent wording of the statute is as follows:

"And whoever having the charge or custody of any animal, either as owner or otherwise, inflicts unnecessary cruelty upon the same, or wilfully fails to provide the same with proper food, drink, shelter, or protection from the weather, * * * ."

The motion was denied and defendant questions the propriety of this ruling by his first question, "Did the record contain evidence justifying jury submission of the question whether defendant inflicted injury on his animals?"

The transcript contains testimony before the close of people's case of the emaciated condition of some of the animals, that some bore marks of beatings and that defendant was the owner of the animals. There was no proof of wilful deprivation of proper food and drink, and although the fact of deprivation of proper food and drink was inferable from the emaciated condition, violation of the statute was

not shown without a showing of wilfulness or facts from which wilfulness could be inferred.

On the question of inflicting unnecessary cruelty upon the animals, defendant's position is untenable unless the statute is interpreted to mean that direct proof of such infliction is required. We refuse to interpret the statute so restrictively and agree with the trial court that unnecessary cruelty may be inflicted by inattention to the condition of the animals. The record at the close of people's case did support a holding that defendant was inattentive to existing condition of the animals that required attention. It was not error to deny the motion and leave the question for jury determination. *People* v. *Williams* (1922), 218 Mich 436.

Following denial of his motion to dismiss, defendant testified. His testimony established beyond peradventure that his animals were beaten, but, according to him, the beating was done by others. This precludes us from accepting defendant's statement of claimed question No. 2 in the following form:

"May defendant owner of farm animals be convicted of cruelty for omitting to give certain medical care or omitting to obtain outside advice or veterinary medical care for his injured animals;

"(1) Under statute (CL 1948, § 752.21 [Stat Ann 1962 Rev § 28.161]) which does not express any duty to give or provide medical care nor set out any standard of care or require the obtaining of veterinary care for injured animals, and

"(2) Under a record devoid of proof establishing the existence of any custom or practice followed by animal owners generally or actually or inferentially known to defendant?"

If there is a second question, it would be whether the record before us sustains the conviction, and it clearly does.

Affirmed.

McGregor, P. J., concurred with Quinn, J.

Levin, J. (*dissenting*). While the people proved the defendant's animals had been injured and endeavored to show that the defendant inflicted such injuries, the people did not confine their proofs or their claims to such evidence.

The majority affirm on the ground that the record would support a finding by the jury "that the defendant was *inattentive* to existing condition of the animals that *required attention.*" One may indeed, as the majority hold, violate the statute by inattention or nonfeasance. Wilful cruelty, torture, and the like need not be shown. However, all needs of the animal are not covered by the statute.[1] The statute particularizes those needs that an owner must satisfy or risk legal sanction. Food, water, and shelter must be provided. I do not think the statute requires an owner to provide medical treatment for a sick animal.

The record shows that 2 cows had died some time prior to the date of the alleged offense, June 1, 1963.[2]

---

[1] "Whoever overdrives, overloads, drives when overloaded, overworks, tortures, torments, deprives of necessary sustenance, cruelly beats, mutilates, or cruelly kills, or causes or procures to be so overdriven, overloaded, driven when overloaded, overworked, tortured, tormented, deprived of necessary sustenance, cruelly beaten, mutilated, or cruelly killed, any animal, and whoever having the charge or custody of any animal, either as owner or otherwise, inflicts unnecessary cruelty upon the same, or wilfully fails to provide the same with proper food, drink, shelter, or protection from the weather, shall, for every such offense, be punished by imprisonment in jail not exceeding 3 months or by fine not exceeding 100 dollars, or by both such fine and imprisonment." CL 1948, § 752.21 (Stat Ann 1962 Rev § 28.161).

[2] The complaint charges that: "On the 1st day of June and continuing A. D. 1963 * * * that George Olary * * * being the owner of a herd of cattle inflicted unnecessary cruelty upon the

On that date 1 injured, emaciated cow was found in the pasture by law-enforcement officers. The injured cow "required attention" for her wounds and emaciation. The majority, however, hold there was no proof of wilful deprivation of proper food and drink. What, then, of the wounds?

While the trial judge did not specifically define "indifference"[3]—which is synonymous with the majority's term "inattentive"—the nature of the claim of indifference or inattentiveness was that even if the defendant had not himself injured the 2 dead cows and 1 surviving cow and deprived them of food, he was guilty of "inflicting unnecessary cruelty" in failing to treat the injured, emaciated cow found in the pasture by the authorities on June 1.

The prosecutor has not filed a brief with our Court. We do not know whether he would contend that the defendant could properly be convicted because the cow was found by the authorities in the pasture rather than in the barn, as a humane society inspector opined it should have been. It was June in St. Clair county. We are not told of the weather

---

same, and wilfully failed to provide the same with proper food, drink, shelter, or protection from the weather contrary to CL 1948, § 752.21 (Stat Ann 1962 Rev § 28.161)."

3 The entire charge of the court concerning the factual issue presented to the jury for decision follows: "The charge here is brought under the statute which provides as follows: CL 1948, § 752.21 (Stat Ann 1962 Rev § 28.161), reading the part that I feel is material, 'whoever tortures, torments, deprives of necessary sustenance, cruelly beats, mutilates, or cruelly kills or causes or procures to be so tortured, tormented, deprived of necessary sustenance, cruelly beats, mutilates, or cruelly kills any animal and whoever having the charge or custody of any animal either as owner or otherwise inflicts unnecessary cruelty upon the same or wilfully fails to provide the same with proper food, drink, shelter or protection from the weather, shall be punished.' The charge here is under the statute. George Olary, being the owner of a herd of cattle, inflicted unnecessary cruelty upon the same and wilfully failed to provide the same with proper food, drink, shelter or protection from the weather contrary to the statute, which stands as denied and which presents the question for you to determine. Torture inflicted by mere inattention and criminal indifference to it and anything resulting from it may be

or the condition of the barn.[4] The inspector did not state the cow would *suffer* less in the barn, only that it *belonged* in the barn for *treatment*.

This brings us to what I believe is the meritorious question presented by this appeal, namely, whether a farmer "inflict[s] unnecessary cruelty" on an animal he owns by failing to provide medical treatment. The prosecution called a veterinarian who testified that the abscess on the injured cow had been developing over a period of 30 to 45 days. The defendant had not sought the services of a veterinarian. The trial judge stated during the course of the argument of defendant's motion to dismiss, following the conclusion of the people's proofs, that the owner of a cow obviously suffering from open wounds inflicts unnecessary cruelty if he doesn't "either put her out of her misery or call the doctor to do so or treat her or attempt to treat her"; and he later said, the defendant "could have certainly either treated or put the animal out of its suffering." He charged the jury: "Torture inflicted by mere inattention and criminal indifference to it and anything resulting from it may be sufficient to find and warrant a conviction under this statute."

In my opinion the owner of an injured animal does not violate the statute by failing to provide the animal with medical care. The statute imposes a penalty upon a custodian or owner who "inflicts unnecessary cruelty upon the same, or wilfully fails to provide the same with proper food, drink, shelter

---

sufficient to find and warrant a conviction under this statute." Later: "I will not bother to restate the claims of the parties except as I covered them in the initial part of this charge, because the case is brief and I think you know them."

[4] To have put the cow in the barn might have been the basis of a charge that the defendant was aggravating the pitiful condition of the animal. Under the circumstances it may well have been less cruel to permit the animal to graze in the pasture than to keep it penned up in the barn.

or protection from the weather."[5]   The owner's
financial obligations to the animal under the statute
are discharged when he provides proper food, drink,
shelter or protection from the weather.  He does
not have the obligation to hire a veterinarian, pro-
vide medicine and incur other expenses to sustain
an injured animal.

Regarding treatment by the owner himself, there
is no evidence in the record that defendant had any
competence to treat the animal, or as to what he
might have done that he did not do which might
or would have alleviated the animal's distress.  So
far as putting the animal out of its misery, on this
record that is a thin reed on which to rest a con-
viction.  The abscess developed over a period of
30 to 45 days.  Might not the defendant have prop-
erly hoped that the natural healing processes would
cure the infection?  Neither the veterinarian nor
anyone else testified that the cow's illness was ter-
minal, or indeed that the assistance of a veterinarian
should have been obtained or, had it been, that the
veterinarian could have done anything for the ani-
mal.  At what point in time during the 30-to-45-day
period was the defendant obliged to dispatch the
cow?

We should not forget that we construe a criminal
statute.  Legislation declaring behavior criminal
must be so "plain and unambiguous that 'he who
runs' may read, and understand whether his conduct
is in violation of its provisions." *People* v. *Ellis*
(1918), 204 Mich 157, 161.

"No one may be required at peril of life, liberty
or property to speculate as to the meaning of penal

---

[5] The complaint does not charge that the defendant "deprived
[the cow] of necessary sustenance". Furthermore, it is clear from
the fact that the prohibition against *depriving* an animal of "neces-
sary sustenance" applies to everyone, not only custodians and
owners, that it was not intended by that language to impose an
*affirmative* duty to provide "necessary sustenance". Any other inter-

statutes." *Lanzetta* v. *New Jersey* (1939), 306 US 451, 453 (59 S Ct 618, 619, 83 L Ed 888, 890).[6]

Where the alleged crime is expressed in terms of the commission of an affirmative act (*i.e., infliction* of unnecessary cruelty) and it is sought to hold a defendant for nonaction (*i.e.,* inattention, indifference) we should be especially careful in appraising a claim that such language imposes a *duty* on the part of the defendant to be attentive—in this case, to provide treatment and thereby avoid *infliction* of unnecessary cruelty. We should avoid substituting our own sensitivities and judgment for that of the legislature.

The legislature has not yet made it a crime for the owner of an animal

to fail to put it out of its misery,—at least where there is no evidence that it should have been clear to the owner that the illness would inevitably terminate in death;

to fail himself to provide treatment,—at least where there is no evidence that he is qualified to provide helpful treatment that he failed to provide; or

to provide the services of a veterinarian, medicines and the like without limitation as to expenditure,—at least where there is no testimony that such services might or would have been helpful in alleviating the animal's distress, entirely apart from whether anything could have been done that might have aided its recovery.

The legislature specifically defined the expenditures an owner is required to make. He must pro-

---

pretation would make superfluous the imposition on a custodian or owner of the affirmative duty to provide food, drink, and shelter.

[6] See, "The Void for Vagueness Doctrine in the Supreme Court", 109 U Pa L Rev 67 (1960), and Justice Black's dissent in *Edelman* v. *California* (1953), 344 US 357, 362 (73 S Ct 293, 295, 97 L Ed 387, 393). See, also, *City of Detroit* v. *Bowden* (1967), 6 Mich App 514.

vide food, water, shelter, or protection from the weather. We are not justified in adding to the legislative mandate concerning the owner's financial burdens. The legislature has simply failed to impose on the owner of a sick animal the duty to provide for its medical treatment. This may be a problem deserving thoughtful legislative consideration, but it is a legislative problem, not a judicial one. To allow juries to determine questions such as this on an *ad hoc, ad hominem* basis is not only inconsistent with a fair reading of the legislative language, but raises serious constitutional questions under the due process clauses of both our State and Federal constitutions,[7] questions best avoided by eschewing an interpretation which would impose upon owners an unexpressed, undefined duty to provide treatment for their sick animals.[8]

In *State* v. *Buford* (1958), 65 NM 51, 58 (331 P2d 1110, 1115, 82 ALR2d 787), the court held New Mexico's cruelty to animals statute did not prohibit cockfighting, and in so holding made the following observation:

"Penal statutes are to be strictly construed since every man should be able to know with certainty when he is committing a crime. *United States* v. *Reese* (1875), 92 US 214, (23 L Ed 563); *State* v. *Ikeda* (1943), 61 Ariz 41 (143 P2d 880). Such a statute should define the act necessary to constitute the offense with such certainty that the person violating it must know that his act is criminal when he does it."[9]

I also think it significant that the extensive annotation following the cited case, "What constitutes

---

[7] US Const, Am 14; Mich Const 1963, art 1, § 17.

[8] See 16 Am Jur 2d, Constitutional Law, § 145; *People* v. *Dubina* (1943), 304 Mich 363. Compare *People* v. *Adamowski* (1954), 340 Mich 422, 429.

[9] *Accord: State* v. *Stockton* (1958), 85 Ariz 153 (333 P2d 735).

statutory offense of cruelty to animals", 82 ALR2d 794, as supplemented by the Later Case Service, lists not one case where it was sought to apply such a statute on the ground that the owner had failed to provide medical treatment for the animal. Separate research failed to disclose any such authority.