## PEOPLE *v.* OLARY.

OPINION OF THE COURT.

1. CRIMINAL LAW—CRUELTY TO ANIMALS—MISDEMEANOR.
   Statute permitting imposition of punishment by imprisonment in jail not exceeding 3 months or by fine not exceeding $100 or both such fine and imprisonment for cruelty to animals provides for a misdemeanor (CL 1948, § 752.21).

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 21 Am Jur 2d, Criminal Law § 18 *et seq.*
[2, 10, 11] 4 Am Jur 2d, Animals §§ 28, 29.
   What constitutes statutory offense of cruelty to animals.   82 ALR2d 794.
[3, 7-9] 31 Am Jur, Justices of the Peace § 129.
[4] 31 Am Jur, Justices of the Peace § 128.
[5, 6] 21 Am Jur 2d, Criminal Law § 570.

2. ANIMALS—CRUELTY—EVIDENCE.

Conviction of defendant for cruelty to animals is lawful and proper where testimony is presented that defendant had a lame, injured, disabled, and emaciated cow on his farm that appeared to have been beaten and had a puncture wound of the stifle joint and other wounds that looked like they had been caused by forceful pressure on the cow's side and back with a pitchfork (CL 1948, § 752.21).

3. APPEAL AND ERROR—TRIAL DE NOVO—HARSHER SENTENCE.

There is an appeal as a matter of right to the circuit court from a judgment of the justice court; however, the trial in circuit court is *de novo* and hence the circuit court may fix sentence at any amount provided by statute irrespective of whether the sentence is harsher than the one imposed by the justice of the peace.

4. SAME—JUSTICE OF THE PEACE—CIRCUIT COURT—JURISDICTION.

An appeal from a justice of the peace to the circuit court amounts to a vacation of the judgment appealed from and places the action within the circuit court jurisdiction to be proceeded in as if it were an original proceeding in the circuit court.

5. CRIMINAL LAW—RETRIAL—HEAVIER SENTENCE.

The imposition of a heavier sentence on a second trial, after remand on reversal by an appellate court, by the same trial court which had first imposed a sentence, pursuant to the trial court's announced practice for defendant's having pursued his constitutional rights and getting his original conviction set aside for constitutional and even other errors, would be vindictive and unconstitutional.

6. SAME—JUSTICE OF THE PEACE—DE NOVO TRIAL IN CIRCUIT COURT —SENTENCE.

Requirement of decision of the Supreme Court of the United States, rendered subsequent to action of circuit court herein, that trial judge who conducts a second trial for offense charged, tried, convicted, appealed and reversed must place in the record his reason for imposing a heavier sentence than first imposed, does not apply to circuit court which conducted a *de novo* trial on appeal from justice of the peace and imposed a 75-day sentence in jail and $75 costs, whereas the justice of the peace had imposed 2 years' probation and fine and costs of $79.75 for cruelty to animals, there being nothing to indicate any judicial vindictiveness was involved (CL 1948, § 752.21).

7. SAME—JUSTICE OF THE PEACE—CIRCUIT COURT—SENTENCE.

   A circuit judge is not required to place in the record his reason for imposing a different second sentence upon defendant for cruelty to animals than had been imposed by justice of the peace, where the first sentence had not been imposed by the circuit judge, an appeal of right had been taken by defendant which vacated the first sentence, and the law-trained circuit judge had the benefit of a probation officer's report when he imposed such a sentence within the limits of the statute as he thought just and proper (CL 1948, § 752.21).

8. SAME—JUSTICE OF THE PEACE—CIRCUIT COURT—TRIAL DE NOVO.

   Possible errors which may have been committed by a justice of the peace are not considered on an appeal from conviction in his court to the circuit court, where the defendant is accorded a trial and sentence *de novo* on his appeal as a matter of right.

9. SAME—CIRCUIT COURT—SENTENCE—REASONS.

   A circuit judge is not required to incorporate in the record of a prosecution for crime his reasons for meting out the punishment he did on the first trial of cases within the jurisdiction of the circuit court.

### DISSENTING OPINION.

### T. M. KAVANAGH and T. G. KAVANAGH, JJ.

10. ANIMALS—CRUELTY—STATUTES—CRIMINAL LAW—MEDICAL CARE.

   *State statute prohibiting cruelty to animals does not impose a duty on the owner or custodian of animals to provide medical attention for them under pain of conviction for cruelty (CL 1948, § 752.21).*

11. SAME—CRUELTY—STATUTES—CRIMINAL LAW—INATTENTION—APPEAL AND ERROR.

   *Charge of cruelty to animals should have been dismissed upon defendant's motion at the close of the people's case, because failure to destroy sick animals and to provide medical treatment or services of a veterinarian are not crimes under the State statute; thus, on appeal, defendant's conviction should be set aside and defendant discharged (CL 1948, § 752.21).*

Appeal from Court of Appeals, Division 2, McGregor, P. J., and Quinn and Levin, JJ., affirming St. Clair, Miller (Allan C.), J., presiding. Submit-

ted May 8, 1969. (Calendar No. 20, Docket No. 52,018.) Decided October 6, 1969.

10 Mich App 640, affirmed.

George Olary was convicted of cruelty to animals. Defendant appealed to the Court of Appeals. Affirmed. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Walter W. Turton,* Prosecuting Attorney, for the people.

*William R. Walsh, Jr.,* for defendant.

DETHMERS, J. Defendant was convicted by jury verdict in a justice of the peace court of the crime of cruelty to animals in violation of CL 1948, § 752.21 (Stat Ann 1962 Rev § 28.161). He was there sentenced to 2 years' probation and to pay fine and costs of $79.75. He took an appeal to circuit court and, as provided by law, had a trial *de novo* there before a jury. A verdict of guilty was again returned and the circuit court imposed a sentence to serve 75 days in the county jail and pay costs of $75. On appeal therefrom to the Court of Appeals, it affirmed the circuit court judgment and sentence. From that, defendant's appeal is here on leave granted. 381 Mich 777.

Two questions are raised on this appeal by defendant: (1) whether the proofs sustain a verdict of guilty of cruelty to animals under the statute and, particularly, whether proof of failure to provide medical treatment for cows, as needed, establishes such guilt; (2) whether it was lawful for the circuit court, upon conviction at the *de novo* proceedings in

that court, to impose a greater sentence than that previously pronounced by the justice of the peace.

The statute making cruelty to animals a crime reads as follows:

"Whoever overdrives, overloads, drives when overloaded, overworks, tortures, torments, deprives of necessary sustenance, cruelly beats, mutilates, or cruelly kills, or causes or procures to be so overdriven, overloaded, driven when overloaded, overworked, tortured, tormented, deprived of necessary sustenance, cruelly beaten, mutilated, or cruelly killed, any animal, and whoever having the charge or custody of any animal, either as owner or otherwise, inflicts unnecessary cruelty upon the same, or wilfully fails to provide the same with proper food, drink, shelter, or protection from the weather, shall, for every such offense, be punished by imprisonment in jail not exceeding 3 months or by fine not exceeding 100 dollars, or by both such fine and imprisonment."

This is a misdemeanor.

The warrant charged defendant as follows:

"Count 2.  That George Olary, late of the township of Emmett, county of St. Clair and State of Michigan, being the owner of a herd of cattle inflicted unnecessary cruelty upon the same, and wilfully failed to provide the same with proper food, drink, shelter or protection from the weather, contrary to CL 1948, § 752.21 (Stat Ann 1962 Rev § 28.161)."

Witnesses for the people at the circuit trial were an inspector for the humane society, a deputy sheriff, and a veterinarian.  They saw a lame, injured, disabled, and emaciated cow on defendant's farm that appeared to have been beaten and had a puncture wound of the stifle joint and other wounds that looked like they had been caused by forceful pressure on the cow's side and back with a pitchfork,

An abscess had formed at one puncture wound which the veterinarian estimated had been developing for a period of from 30 to 45 days. Witnesses also saw, lying in the pasture there, the emaciated bodies of 2 dead cows, partially decayed, which had been beaten and abused, covered with abrasions and dead for some length of time. They talked with defendant at the time of their visit at his farm and he told them that the cows had been well just a short time before. The witnesses said that the evidences were such that this could not have been true. He also told them, when asked why the cattle were in the shape they were in, that the cows had been fighting and that two had died but that he did not know the cause of death. Defendant testified at trial, however, that enemies of his had beaten and injured the cows. He said that he had not called a veterinarian nor treated or caused the injured cows to be treated nor placed in the barn. He just left them in the pasture. It did appear that there was ample pasturage and water for these and defendant's other cattle.

Defendant, on this appeal, argues that there was no evidence that defendant had caused the injuries to the cows, that the Court of Appeals has upheld the conviction on the theory that, regardless of who inflicted the injuries, defendant was guilty of cruelty to animals by his inattention to the condition of the animals and failure to provide them with medical treatment, but that the statute does not, in its definition of cruelty, include failure to give medical attention.

Defendant also says that to hold defendant's inattention to constitute a violation of the statute would amount to permitting a criminal conviction for action or inaction which an advance reading of the statute would not have informed defendant was a criminal offense.

We think, however, that the record, as briefly sketched above, is ample to support a finding of cruelty consisting of conduct which defendant, a farmer, could well have realized was cruel and which the jurors readily recognized as such. We think the conviction lawful and proper.

Defendant had a right to take an appeal from justice to circuit court. Such appeal calls for trial *de novo* in the circuit court. This the defendant had before a second jury. That appeal amounted to a vacating and superseding of the judgment appealed from and placed the case within the circuit court jurisdiction to be proceeded in as if it were an original proceeding in that court. *People* v. *Underwood* (1920), 209 Mich 348. As said in *People* v. *Powers* (1935), 272 Mich 303, about an appeal from justice to circuit court in a criminal case:

"The defendant, however, had a right to appeal * * * and, when he did so, he conferred jurisdiction upon the circuit court to try the case anew and render judgment thereon as provided for in the statute."

The sentence here imposed in circuit court was within the limits provided in the governing statute above quoted. The fact of a lesser previous sentence by the justice of the peace, which had been vacated by the appeal to the circuit court, in no way limited the circuit court powers to fix sentence at any amount permitted by that statute.

In this connection we are aware of the decisions and opinions handed down by the Supreme Court of the United States on June 23, 1969, in the combined cases of *North Carolina* v. *Pearce* and *Simpson* v. *Rice* (1969), 395 US 711 (89 S Ct 2072, 23 L Ed 2d 656). These are State cases in which convictions in trial courts were later set aside by State appellate courts because they were held to have been the

product, in part, of procedures which represented denial of Federal constitutional rights. Accordingly, the cases were remanded to the trial courts from which they had come, for retrial, and, upon second convictions, the original sentencing trial courts imposed harsher sentences than the first. While it appears that a majority of the Supreme Court did not view the increase of sentence as amounting to double jeopardy or denial of equal protection, they did see, in such situation, the possibility of violation of due process of law. It is said in one of the opinions that for a trial court to follow an announced practice of imposing heavier sentence as punishment for defendant's having pursued his constitutional rights and getting his original conviction set aside because of constitutional or even other errors, would render an appeal on the part of the accused hazardous and that such course would be vindictive and unconstitutional. A court may not place such a price on an appeal. The opinion goes on to say, however, that the prevalent modern philosophy of penology is that the punishment should fit the offender and not merely the crime. Then the rather amazing requirement seems to be expressed that, if a greater sentence is imposed after the second conviction, the sentencing judge must cause to be placed in the record his reasons for so doing, based on conduct of the defendant occurring after the first sentencing or, at least, on subsequent information coming to the judge after the first sentence.

Whatever may be thought of such a holding and requirement, especially in those cases in which the judge could have had no knowledge, at time of the second sentence, that such a requirement was later to be announced by the United States Supreme Court, at all events it has no application here. The differ-

ences between the cases under consideration by that
court and the instant one are numerous. In the first
place, the cited cases are those in which the first con-
victions were improperly obtained, reversed on ap-
peal for constitutional or other error, and then re-
manded for a second trial in the same court. There
it could be said that if defendant had been properly
tried the first time and convicted, his sentence un-
doubtedly would have been the same as was imposed
on him and that, therefore, with errors and viola-
tions of his constitutional rights having occurred
which contributed to his first conviction, the harsher
second sentence would amount to penalizing him
for appealing and seeking a fair and valid trial.
That this could give rise to a question of whether
defendant had been accorded due process is evident.
Here, under Michigan procedure then in effect, no
such thing has happened. Defendant was convicted
in justice court, took an appeal as of right to circuit
court in which the question of possible errors in the
first trial is not considered, but a trial *de novo,* with-
out regard to the first, is accorded defendant. He
sought *de novo* proceedings in circuit court and got
it, both as to trial and sentence. Second, the orig-
inal sentence was imposed by a justice of the peace,
not required to be legally trained, and the second
sentence was by a circuit judge, a duly licensed law-
yer, after report to him, as provided by statute, by
the probation officer as to defendant's background,
record and attitude, to enable the circuit judge to
fit the punishment to the offender. This benefit the
justice of the peace did not have. An understanding
of all these circumstances and applicable Michigan
practice and procedure makes it clear that nothing
in the nature of judicial vindictiveness or an attempt
to punish for the temerity of taking an appeal and
establishing error in the first trial is involved in this

case. Even in cases of felonies, in which jurisdiction to try rests only with the circuit court and the first trial occurs there, the judge is not required to incorporate in the records his reasons for meting out the punishment he did, nor is that the practice in this State. There was, then, no reason here for the circuit judge to place in the record his reason for a different second sentence because he had not imposed the first one, but was merely doing, within the limits of the statute, what he, as a law-trained judge with the benefit of probation officer's report, thought just and proper. Neither this Court nor any other has occasion to call that into question.

Affirmed.

T. E. BRENNAN, C. J., and KELLY, BLACK, and ADAMS, JJ., concurred with DETHMERS, J.

T. G. KAVANAGH, J. (*dissenting*). This is not a pleasant case. Several of his cows were cruelly injured and died, and the 66-year-old defendant's bizarre explanation that gangsters in the employ of his divorced wife inflicted the injuries is incredible.

It would be more comfortable to affirm this misdemeanor conviction and righteously approve the $75 cost exaction and the 75-day sentence.

But the point of law raised by this appeal is more important than our sensibilities.

At the close of the people's case the defense moved for dismissal of the charges on the ground that the record contained no evidence of the defendant's treatment of the cows and hence no proof of cruelty.

The trial court ruled that since the defendant was the owner of the cows and since the injuries to the cows were evident to the naked eye and the defendant must have seen this condition, it was a reasonable inference that he was responsible for not calling

a doctor for the injured cows. The court then ruled that it was "inflicting unnecessary cruelty when you see a cow obviously suffering from open wounds and don't either put her out of her misery or call the doctor to do so or attempt to treat her" and denied the motion.

A majority of the Court of Appeals panel held the trial judge thereby committed no error. (10 Mich App 640, 643.) We do not agree.

We think the dissent of Judge Levin[1] adequately and correctly states the law. We adopt it as our own. The quoted statute[2] does not impose a duty on the owner or custodian of animals to provide medical attention for them under pain of conviction for cruelty.

We would hold that the trial court should have dismissed the charges at the close of the people's case.

In view of our holding on this question we would deem it unnecessary to consider the other question raised by the appellant.

We would set aside the conviction and order defendant discharged.

T. M. Kavanagh, J., concurred with T. G. Kavanagh, J.

[1] 10 Mich App 640, 644-650.
[2] CL 1948, § 752.21 (Stat Ann 1962 Rev § 28.161).