STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v.
SAVERIO DE BONIS, DEFENDANT-APPELLANT.

Argued December 7, 1970—Decided April 8, 1971.

*Mr. Peter M. Siegel* argued the cause for appellant (*Mr. Robert A. Mattia* and *Mr. Phillip N. Brown,* of the New York bar, on the brief).

*Mr. James J. Ciancia* argued the cause for New Jersey State Office of Legal Services, *amicus curiae* (*Mr. Carl F. Bianchi,* attorney).

*Mr. Peter A. De Sarno,* Assistant Prosecutor, argued the cause for respondent (*Mr. Edward J. Dolan,* Middlesex County Prosecutor, attorney).

The opinion of the Court was delivered by

WEINTRAUB, C. J. Defendant pled guilty in a municipal court to a number of motor vehicle charges. The municipal court imposed fines and costs. The trial court refused defendant's application to pay in installments and ordered defendant committed until payment was made. Defendant thereupon appealed to the county court solely from the sentence. The appeal to the county court called for a *de novo* determination of the punishment. *R.* 3:23–8(a). The county court imposed jail sentences together with fines and costs but suspended the payment of the fines and costs. Defendant appealed to the Appellate Division, and we certified the matter before that appeal was heard.

Defendant raises two issues. The first is whether the county court could impose a heavier sentence than that from which defendant appealed. The second is whether the Constitution required that defendant be permitted to pay the fines and costs in installments because of his alleged inability to pay them in one lump sum. The issues will be considered in that order.

I

Six motor vehicle charges were involved. Three consisted of driving while on the revoked list, as to which the authorized punishment for each offense was a fine of not less than

$200 nor more than $1,000, or imprisonment for not more than six months, or both. *N. J. S. A.* 39:3-40. Two charges consisted of applying for a driver's permit while the driver's license was revoked. As to each of those charges, *N. J. S. A.* 39:3-34 authorized a maximum fine of $500 or maximum imprisonment of three months, or both. The remaining charge was for failing to have a driver's license in his possession, as to which *N. J. S. A.* 39:3-29 authorized a fine up to $100.

The municipal court imposed fines totalling $705 together with costs of $25. Under the terms of the commitment, defendant, if he did not pay, would be held for 146 days pursuant to *N. J. S. A.* 39:5-36 which provides that there be credited against the fines and costs the sum of $5 for each day of confinement. The county court, on its *de novo* determination, imposed three concurrent jail terms of 90 days for driving while on the revoked list, and with respect to the remaining charges, the court imposed fines totalling $250, with costs totalling $15. Payment of the fines and costs was suspended.

The sentences imposed by the county court could not be questioned in terms of severity. Defendant's record is bad. His involvements with the criminal law have been numerous over a span of some ten years. Apparently the disposition of the charges here involved was delayed because defendant served an intervening term in State Prison on an unrelated charge. Indeed defendant does not challenge the sentences in such terms, but rather contends the sentences are more severe than the sentences imposed in the municipal court and that the Constitution bars the imposition of greater punishment by an appellate tribunal.

Defendant says the county court sentences are more severe because, although the jail term is less than the 146 days he would experience under the sentences imposed by the municipal court if he did not pay the fines and costs, nonetheless the opportunity should have remained his to try to pay. He of course adds that he would find payment less painful

than 90 days in jail. We cannot quarrel with his evaluation of the relative severity of the sentences. This being so, we proceed to the next step in his argument, that the county court could not constitutionally increase the punishment imposed by the municipal court.

As to this, defendant refers to cases dealing with the imposition of greater punishment upon a retrial of a charge after a reversal of a conviction. In *North Carolina v. Pearce,* 395 *U. S.* 711, 89 *S. Ct.* 2072, 23 *L. Ed.* 2d 656 (1969), starting with the proposition that the due process clause of the Fourteenth Amendment would be violated if a defendant were punished more severely on a retrial merely because he had exercised his right to appeal, the Court, to guard against such vindictiveness, held that a harsher penalty may not be imposed unless it "affirmatively" appears that the penalty was enlarged because of "objective information concerning identifiable conduct on the part of a defendant occurring after the time of the original sentencing proceeding," 395 *U. S.* at 726, 89 *S. Ct.* at 2081, 23 *L. Ed.* 2d at 670. See *State v. Jacques,* 52 *N. J.* 481 (1968), *cert.* denied, 395 *U. S.* 985, 89 *S. Ct.* 2138, 23 *L. Ed.* 2d 774 (1969), where we held that an intervening conviction for another offense justified a greater punishment upon reconviction.

The State urges that *Pearce* does not apply because on appeal to the county court the "review" consists of a trial *de novo* as to both guilt and punishment. *State v. States,* 44 *N. J.* 285 (1965). Here the appeal did not involve guilt because defendant, having pled guilty in the municipal court, could appeal only with respect to the sentence. *State v. Mull,* 30 *N. J.* 231 (1959). Nonetheless the appeal required a *de novo* sentence, and the right to a *de novo* determination of punishment did not depend upon proof of error in the sentence imposed by the municipal court.

There are cases which hold *Pearce* does not apply to an appeal which consists of a trial *de novo. Lemieux v. Robbins,* 414 *F.* 2d 353 (1 Cir. 1969), *cert.* denied, 397 *U. S.* 1017, 90 *S. Ct.* 1247, 25 *L. Ed.* 2d 432 (1969) ; *People v. Olary,*

382 *Mich.* 559, 170 *N. W.* 2d 842 (Sup. Ct. 1969) ; *State v. Spencer,* 276 *N. C.* 535, 173 *S. E.* 2d 765 (Sup. Ct. 1970) ; *contra, Torrance v. Henry,* 304 *F. Supp.* 725 (E. D. N. C. 1969). The thought is that where an appeal is a trial *de novo,* the initial trial is but a "dry run" if the accused chooses so to treat it, and since the right to and the result of the retrial do not depend upon the existence of error in the trial below, it cannot be said, as it may be with respect to a retrial after a reversal, that the defendant's successful demonstration of reversible error served to give the prosecution a chance to obtain a larger sentence.[1]

██ But we need not pursue the inquiry in constitutional terms, for we are satisfied that as a matter of policy and apart from constitutional compulsion, a defendant who appeals from a municipal court should not risk a greater sentence. In reaching that conclusion, we are mindful of the reason for a trial *de novo* in these matters. The Legislature long ago provided for a retrial at the county level because of the weaknesses inherent in the system of local courts whose judges were locally appointed, served part-time, and frequently were not even members of the Bar. A structure of that kind could not command the complete confidence of the public. Although the municipal court of today is much improved over its ancestors, the structure remains unsound. There are 523 municipal courts. Their judges are still appointed locally, still serve part-time, and although membership at the Bar is now required (subject to a grandfather clause, *N. J. S. A.* 2A:8-7), this antiquated system of local

---

[1] Indeed it is not clear that *Pearce* would apply to a *de novo* sentence by an appellate court on direct appeal, as for example, under a statutory program which permits a defendant to seek a new sentence from an appellate tribunal at the risk of a heavier one. *Pearce* was concerned with the danger of vindictiveness on the resentence and the impact of that hazard on the right to appeal. If the primary emphasis is upon vindictiveness, the Supreme Court might find that danger to be negligible when the resentencing is by an appellate court rather than by a trial court which was reversed for error.

courts cannot inspire the confidence with which the public approaches our county courts. We intend no reflection upon the many judges of the municipal courts who work hard and conscientiously notwithstanding the shortcomings of the system itself. Rather we recognize that, so long as this system endures, the need remains to afford the litigant, frequently a stranger to the locality, the opportunity to seek a redetermination by a court at a higher level without the risk of a larger penalty.

## II

The next question is whether defendant was entitled to an opportunity to pay the fine in installments. We have no record of what transpired before the municipal court in this regard. The parties agree that defendant did seek to pay the fine in installments, but they cannot agree as to the reason why his application was denied.

The authority to permit such payments has long been clear, either as a condition of probation, *N. J. S. A.* 2A:168-2, or independent of probation. The authority to fix the time for payment of a fine is implicit in the power to impose the penalty. That authority is reflected in *N. J. S. A.* 2A:166-15 which deals with misdemeanors. We do not know how freely the municipal courts have exercised their discretion in favor of defendants. We do find that in Bulletin Letter No. 48 sent to the municipal courts in January 1960, it was noted that "a number of municipal courts permit the payment of fines in installments," either directly to the clerk of the court or through the probation office as an incident to probation. That letter suggested such payments be permitted "only in those cases where there is good cause to believe that the defendant can and will abide by the court order and where it is unlikely that the defendant will become a fugitive." The Bulletin Letter reminded the municipal courts of their responsibility to act if the terms of such orders are breached. We do know that in the court year September 1, 1969 to

August 31, 1970, a total of 11,623 persons[2] were committed to jail "in lieu of payment of fines" in the municipal courts, but we do not know how many failed to pay permitted installments, how many failed to pay after being granted a period of time to pay in one sum, how many paid promptly after being committed for nonpayment, or how many chose to serve time rather than to pay. In short, we do not know how many served a jail term for want of an opportunity to pay the fine in installments.

As we have said, there has been no bar to installment payments. The matter has rested in the court's discretion. The question now before us is whether the Federal Constitution requires an opportunity to pay a fine in installments. The question involves consideration of three recent decisions of the United States Supreme Court. *Williams v. Illinois,* 399 *U. S.* 235, 90 *S. Ct.* 2018, 26 *L. Ed.* 2d 586 (1970); *Morris v. Schoonfield,* 399 *U. S.* 508, 90 *S. Ct.* 2232, 26 *L. Ed.* 2d 773 (1970); and *Tate v. Short,* 401 *U. S.* 395, 91 *S. Ct.* 668, 28 *L. Ed.* 2d 130 (1971).

In *Williams* the defendant was convicted under an Illinois statute which carried a maximum of one year in jail and a fine of $500. The maximum jail sentence and the maximum fine were imposed, and defendant not having paid the fine, he was continued in prison to serve until his fine was liquidated at the rate of $5 per day pursuant to another Illinois statute. The majority opinion stated "the narrow issue" to be "whether an indigent may be continued in confinement beyond the maximum term specified by statute because of his failure to satisfy the monetary provisions of the sentence." 399 *U. S.* at 236, 90 *S. Ct.* at 2019, 26 *L. Ed.* 2d at 590. The opinion concluded that "once the State has defined the outer limits of incarceration necessary to satisfy its penological interests and policies, it may not then subject a cer-

---

[2]In that court year the complaints filed in the municipal courts, exclusive of those referred elsewhere for disposition, exceeded 3,000,000.

tain class of convicted defendants to a period of imprisonment beyond the statutory maximum solely by reason of their indigency." 399 *U. S.* at 241, 90 *S. Ct.* at 2022, 26 *L. Ed.* 2d at 593. This, the majority said, is barred by the equal protection clause of the Fourteenth Amendment. The proposition that further incarceration in lieu of the unpaid fine did not serve the penological objective of the State and constituted imprisonment because of indigency rested upon the premise that (399 *U. S.* at 240, 90 *S. Ct.* at 2022, 26 *L. Ed.* 2d at 592)

> Default imprisonment has traditionally been justified on the grounds that it is a coercive device to ensure obedience to the judgment of the Court. Thus, commitment for failure to pay has not been viewed as a part of the punishment or as an increase in the penalty; rather, it has been viewed as a means of enabling the Court to enforce collection of money which a convicted defendant was obligated by the sentence to pay.

If *Williams* stood for no more than its stated holding, the decision would not reach the case at hand, for the substituted jail time which defendant here would experience if he did not pay the fine would not take his confinement beyond the prescribed maximum jail terms for the violations. Nor would *Williams,* if its stated holding depended upon the thesis contained in the excerpt just cited, apply in our State to a prisoner held beyond the statutory maximum because of nonpayment of the fine. We say this because our statutes substituting jail time for an unpaid fine do not, as *Williams* found with respect to the Illinois statute, operate to extend the jail term beyond "the outer limits of incarceration" which the State found "necessary to satisfy its penological interests and policies." Unlike *Williams'* view of the Illinois statutes, we do not read our statutes prescribing authorized punishment for specific offenses in isolation from statutes providing for substituted jail terms in lieu of unpaid fines (*N. J. S. A.* 39:5–36; *N. J. S. A.* 2A:166–16, and *N. J. S. A.* 2A:169–5). Rather we read them together and

thereby conclude the maximum jail term is not the one stated in a statute relating to a specific offense but rather consists of that authorized jail term *plus* the period of time for which, by the companion statute, an offender may be held in jail if the fine is not paid. See *State v. Lavelle,* 54 *N. J.* 315, 326 (1969) (concurring opinion). Thus the extended incarceration does not exceed "the outer limits of incarceration" which the State found "necessary to satisfy its penological interests and policies."

█ And whatever may have been the ancient office of a fine or of imprisonment for its nonpayment, we are clear that in our State a fine is intended to punish, and that imprisonment upon nonpayment, far from being a collection device, is substituted punishment designed to achieve the punitive end which the fine was imposed to achieve but failed to achieve. Thus it was said in *Lavelle, supra,* 54 *N. J.* at 326-327 (concurring opinion):

> Nor is it correct to say that the purpose of imprisonment for non-payment of a fine is to "compel" its payment. Obviously that is not so. The offender is not held in custody until the fine is fully paid. On the contrary, the fine is liquidated by the imprisonment, and far from yielding payment, such imprisonment results in the loss to the State of both the fine and the cost of the additional confinement. The point to be remembered is that the in-lieu-of imprisonment is substituted punishment to achieve a punitive aim that could not be attained by way of a fine. The statute provides for the liquidation of a fine by time in jail precisely because the fine is intended to punish. Indeed, it would be intolerable to jail an indigent offender until the fine is paid without reduction for the period of detention, for that would smack of imprisonment for nonpayment of a debt rather than of punishment for the penal misdeed.

But the question remains whether, despite the observations we have just made, *Williams* nonetheless bears upon the case at hand, and if it does, the extent of its impact. Although *Williams* stressed the fact that the incarceration extended beyond the maximum term for the specific offense, it is clear that if the equal protection clause was thereby violated, a violation must also be found whenever a man is required to

serve time because he is unable to pay a fine. For if it discriminates invidiously against an indigent to jail him for nonpayment of a fine, the discrimination is the same whether or not a jail sentence was imposed and without regard to the length of the jail term if there was one. Hence the equal protection claim pressed before us must be considered in the light of everything that *Williams* said, notwithstanding that *Williams* purported to decide the issue only as to the precise factual pattern before it.

In dealing with the impact of the equal protection clause, we start with the undeniable premise that an offender is fined because he offended and not because he is poor. *Williams* recognized that "It is clear, of course, that the sentence was not imposed because of his indigency but because he had committed a crime." 399 *U. S.* at 242, 90 *S. Ct.* at 2022, 26 *L. Ed.* 2d at 593. And *Williams* recognized, too, that if a wrongdoer were insulated from punishment because of indigency, equal protection would be denied the offender who is punished. Thus *Williams* said, 399 *U. S.* at 244, 90 *S. Ct.* at 2024, 26 *L. Ed.* 2d at 595:

The State is not powerless to enforce judgments against those financially unable to pay a fine; indeed, a different result would amount to inverse discrimination since it would enable an indigent to avoid both the fine and imprisonment for nonpayment whereas other defendants must always suffer one or the other conviction.

We would think it hard to defend a statute which provided in so many words that a deed is denounced as a crime only if done by one who is not indigent.

Thus *Williams* does not stand for the bald proposition that a jail sentence may not be imposed to achieve a penological objective which a fine failed to achieve because the offender could not pay. In saying that "The State is not powerless to enforce judgments against those financially unable to pay a fine," *Williams* necessarily contemplated that there may be invoked some measure in lieu of the fine which cannot be collected. A full reading of *Williams* reveals that its thrust

was against a statutory scheme which instantly translated a fine into a jail term because the defendant could not pay in full at once. The invidious discrimination was found to inhere, not in the fact that a jail term replaced a fine, but in the denial to the defendant of a fair opportunity to raise the moneys and thereby to experience the same punishment which would be his if he had sufficient funds on hand. That this is the meaning of *Williams* is emphasized by the fact that *Williams* proceeded to mention alternatives which might be pursued and in that regard *Williams* observed in footnote 21 (399 *U. S.* at 244, 90 *S. Ct.* at 2024, 26 *L. Ed.* 2d at 595) that "Appellant has suggested that the fine and costs be collected through an installment plan as is currently used in several States."

That *Williams* really turned upon the denial of a fair opportunity to pay the fine is further evidenced by the concurring opinion there of Mr. Justice Harlan, 399 *U. S.* at 259, 90 *S. Ct.* at 2031, 26 *L. Ed.* 2d at 603, and by the concurring opinion of Mr. Justice White for himself and three others in *Morris v. Schoonfield, supra,* which was decided along with *Williams.* Mr. Justice Harlan could not find the equal protection clause was at all relevant, but he found that the due process clause was involved, and this for the reason that since the State could in his view achieve its penological objective if a fine were paid in installments, it was constitutionally unreasonable to impose the more severe punishment of imprisonment because the defendant was unable to pay the fine in one lump sum. And the concurring opinion of Mr. Justice White in *Morris v. Schoonfield,* written for four members of the majority in *Williams,* also zeroed in upon the denial of an opportunity for time to pay, saying, 399 *U. S.* at 509, 90 *S. Ct.* at 2233, 26 *L. Ed.* 2d at 773–774:

However, I deem it appropriate to state my view that the same constitutional defect condemned in Williams also inheres in jailing an indigent for failing to make immediate payment of any fine, whether or not the fine is accompanied by a jail term and whether or not the jail term of the indigent extends beyond the maxi-

mum term that may be imposed on a person willing and able to pay a fine. In each case, the Constitution prohibits the State from imposing a fine as a sentence and then automatically converting it into a jail term solely because the defendant is indigent and cannot forthwith pay the fine in full.

As I understand it, Williams v. Illinois does not mean that a State cannot jail a person who has the means to pay a fine but refuses or neglects to do so. Neither does it finally answer the question whether the State's interest in deterring unlawful conduct and in enforcing its penal laws through fines as well as jail sentences will justify imposing an "equivalent" jail sentence on the indigent who, despite his own reasonable efforts and the State's attempt at accommodation, is unable to secure the necessary funds. But Williams means, at minimum, that in imposing fines as punishment for criminal conduct more care must be taken to provide for those whose lack of funds would otherwise automatically convert a fine into a jail sentence.

And as we read the later case, *Tate v. Short,* 401 *U. S.* 395, 91 *S. Ct.* 668, 28 *L. Ed.* 2d 130 (1971), the true issue is as we have just stated it. In *Tate v. Short* fines totalling $425 were imposed for traffic offenses under a Texas statute which permitted only the imposition of fines. Defendant not having paid the fines at once, he was ordered to be imprisoned under another statute, to be held until the fines were paid or were liquidated by a jail credit of $5 per day. The Court said that since Texas had "legislated a 'fines only' policy for traffic offenses," the equal protection clause forbade the conversion of the fine into a prison term. The Court explained that "imprisonment in such a case is not imposed to further any penal objective of the State. It is imposed to augment the State's revenues but obviously does not serve that purpose; the defendant can't pay because he is indigent and his imprisonment, rather than aid collection of the revenue, saddles the State with the cost of feeding and housing him for the period of his imprisonment." 401 *U. S.* p. 399, 91 *S. Ct.* p. 671. As we said earlier, we would not so read a statute of our State, for we are satisfied our Legislature provided for substituted jail time in order to further a penal objective by subjecting a defendant to one sting instead of another that failed. But significantly, *Tate* then

quoted with approval the first paragraph of the excerpt we set forth above from the opinion of Mr. Justice White in *Morris v. Schoonfield,* in which the issue is stated in terms of "automatically converting it [a fine] into a jail term solely because the defendant is indigent and cannot forthwith pay the fine in full." *Tate* further emphasized that thesis by repeating so much of *Williams* as recognized the State's interest in enforcing its fines, and then, like *Williams, Tate* referred to "solutions" the State may pursue, speaking in its footnote 5, as *Williams* did in its footnote 21, of a procedure for the payment of fines in installments. Finally, *Tate* concluded with this (401 *U. S.* p. 400, 91 *S. Ct.* p. 672):

We emphasize that our holding today does not suggest any constitutional infirmity in imprisonment of a defendant with the means to pay a fine who refuses or neglects to do so. Nor is our decision to be understood as precluding imprisonment as an enforcement method when alternative means are unsuccessful despite the defendant's reasonable efforts to satisfy the fines by those means; the determination of the constitutionality of imprisonment in that circumstance must await the presentation of a concrete case.

Thus, although *Tate* stressed the fact that the Texas statute authorized only a fine, the equal protection issue did not depend upon that fact. Rather the concern was with any situation in which a jail sentence is substituted for an unpaid fine. Hence both *Tate* and *Williams,* although they purportedly turned upon circumstances which would distinguish the case before us, actually embraced a principle which encompasses our situation. Both make it plain that a defendant may not be jailed merely because he cannot pay a fine in full at once. We must therefore hold that, since the record before us does not reveal some adequate explanation, the municipal court erred in denying defendant an opportunity to pay the fine in reasonable installments.

Mindful of the need for prompt guidance at the trial level with respect to defaults in installment payments, we called for argument upon the question which *Tate* later left

open in the passage just quoted — what may be done with a defendant who does not pay the fine in accordance with ·an installment plan?

We stress again that we are not dealing with a mere debt. A fine, no less than a jail term, is imposed in the hope that it will correct the offender and deter him and others from transgressing. Unless the equal protection clause means that an indigent is licensed to commit with impunity any offense for which a man of means would be merely fined, it must be that if an offender is not reached by a fine because he is unable to pay it, he may be reached in some other way to achieve the required punitive aim. To that end he may be deprived of his liberty, unless, of course, there is some other, less painful way, to achieve the penological aim. And if he is jailed, it will not be because he is indigent, but because he committed an offense and there is no other way to re-shape or to deter him. One must misread the Constitution to find that anyone is privileged to offend.

The issue then is whether there is some other solution which is so plainly adequate for the penological objective that it would deny equal protection or due process to sub-stitute imprisonment for an unpaid fine.

We see no such available solution. A writ of execution is academically at hand, see *N. J. S. A.* 2A:166–11, but it is idle to say the State can achieve its punitive end by a levy when the hypothesis is that the defendant has nothing. We have an old statute, now *N. J. S. A.* 2A:166–14, which pro-vides, in the case of an indictment or accusation, that the defendant "may be placed at labor in any county jail or penitentiary until such fine and costs, or fine or costs, are paid by the proceeds of such labor or otherwise." The statute apparently reflects a practice beyond the memory of any of us. We know of no such jail-work program in our State today, and we would doubt the wisdom of compulsory labor as the medium for inflicting punishment in lieu of a fine. That approach of course would involve imprisonment, the very consequence to be avoided, and the chances of finding

work opportunities compatible with each offender's ability and tolerance are not good. Nor would it be wise to say the Constitution requires the State to find some job the offender can pursue at large, for that too would not be feasible. To insist upon a "solution" which lacks realism must redound to the injury of defendants who might be able to pay a fine, for impractical impediments to the realization of the State's penological objective might drive the sentencing judge to impose jail terms in cases in which he would otherwise have sought that objective through a fine.

■ There being no evident solution adequate to satisfy the State's interest, imprisonment must therefore be a constitutionally permissible substitute for a fine if a defendant fails to pay the stipulated installments.[3] The only question we see is whether the default must be contumacious. See, *In re Antazo*, 3 *Cal.* 3d 100, 115–117, 89 *Cal. Rptr.* 255, 264–265, 473 *P.* 2d 999, 1008–1009 (Sup. Ct. 1970). We think it need not. Again, we are not talking about the collection of a debt; the subject is punishment, and the aim is to inflict a therapeutic sting. Apart from conceptual difficulties implicit in contumacy as the test for substituted punishment,[4] to exonerate a defendant because he cannot pay the

---

[3]The issue before us is limited to what the Constitution commands. If the Constitution does not bar a legislative decision, the judiciary cannot properly concern itself with the wisdom of a statute. It was argued before us that a State incurs considerable expense, direct and indirect, whenever a man is jailed. This is so. And the argument was also advanced that a man cannot be "rehabilitated" by short-term imprisonment. This surely is debatable, especially if it is meant thereby that a short jail sentence will not "deter" the defendant or others. Surely it would not advance the lot of offenders generally to say that all jail sentences must be long-term. In any event, it is for the Legislature to evaluate such considerations. It would belittle the Constitution to say that it ends the debate.

[4]A finding of contumacy would expose the defendant to the possibility of further punishment for contempt. It would involve too the possibility of confinement without time limit or credit until the defendant ends his recalcitrance by paying the fine he contumaciously withheld. It may also be difficult to define a "willful" failure to pay in the light of the behavioral inadequacies of an offender.

fine would defeat the penological objective of the State and be tantamount to a grant of immunity from penal responsibility. The result would be the antithesis of the equality guaranteed by the equal protection clause.

We note that the Model Penal Code (P. O. D. 1962) proposes that a defendant be not jailed if he shows his default was not contumacious, § 302.2(1) and (2), but the Code also proposes that a fine shall not be imposed unless "the defendant is or will be able to pay the fine." *Sec.* 7.02(3). This, we take it, would mean that a jail sentence would be imposed initially if ability to pay did not appear affirmatively, thus denying a defendant an opportunity he might otherwise have to try to pay a fine. In thus preferring an immediate jail sentence to one which ensues upon a default in payment of the fine, the point apparently made is that the jail term is more likely to be just if it is fixed by the sentencing judge rather than by the mechanical application of a statutory formula which translates a fine into days of confinement. See, "Standards Relating to Sentencing Alternatives and Procedures," (A. B. A. 1967), *pp.* 122–124. This is so, and especially if the statutory formula is as absurd as the dollar-a-day formula involved in *People v. Saffore,* 18 *N. Y.* 2d 101, 271 *N. Y. S.* 2d 972, 218 *N. E.* 2d 686 (Ct. App. 1966). The punitive impact of a fine of course depends upon a defendant's resources and that fact is lost in a conversion table. But we are not limited to such extreme alternatives. A better course than either is to permit the imposition of a fine notwithstanding doubts as to ability to pay in installments, and then upon default, to recall the defendant for resentence in the light of the defendant's individual circumstances.

Hence we find the following course to be appropriate. If a defendant is unable to pay a fine at once, he shall, upon a showing of that inability, be afforded an opportunity to pay the fine in reasonable installments consistent with the objective of achieving the punishment the fine is intended to inflict. The installment payments may be col-

lected as an incident of probation, but if probation is not otherwise warranted, the payments shall be made directly to the clerk of the court. If a defendant fails to meet the installments, he shall be recalled for reconsideration of his sentence. The court may reduce the fine, or suspend it, or modify the installment plan, or, if none of those alternatives is warranted, the court may impose a jail term to achieve the needed penological objective. If a jail sentence is thus substituted for the fine, the sentencing judge shall not be obliged to equate a day in jail with a statutorily stated dollar amount. On the contrary, such statutes must be deemed to prescribe only a minimum equivalency. The sentencing judge must impose a lesser jail term if it is adequate in the light of the total circumstances of the individual case.

One further matter remains — the subject of nonpayment of "costs." It may well be that a sentencing judge is mindful of the impact of costs when he decides the nature and amount of the punishment. Nonetheless, in the absence of a statute making "costs" a part of the punishment, costs cannot be deemed to seek a punitive end. See 20 *Am. Jur.* 2d, "Costs," § 110, *p.* 84. Our statutes prescribing punishment for offenses do not include costs among the authorized punitive impositions. See *N. J. S. A.* 2A:85–6 and 7 and *N. J. S. A.* 2A:169–4. It is true that by other statutes, *N. J. S. A.* 2A:166–16 and *N. J. S. A.* 39:5–36, a sentence may order a defendant committed until "fines and costs" are paid, and it could be argued that costs are thereby inferentially deemed to be part of the punishment. But such statutes are equally consistent with the thesis that their purpose was only to authorize commitment as a civil remedy for the collection of costs, and there being no other statute attributing a punitive cast to costs, the statute should be thus narrowly construed. Costs not being a punitive device, there is no basis for the substitution of a form of punishment for their nonpayment. But it nonetheless is appropriate to compel payment as a condition of probation, *N. J. S. A.*

2A:168–2, or by an independent order to pay, but a defendant may not be incarcerated for nonpayment unless it clearly appears that he is able to pay but unwilling to do so. Incarceration in such circumstances serves only to coerce payment and not to punish for the original offense. We add that although theoretically a recalcitrant defendant may be held until he pays the costs without reduction of his indebtedness by reason of his incarceration, the Legislature may ordain that the liability be nonetheless liquidated by dollar credits, as *N. J. S. A.* 2A:166–16 and *N. J. S. A.* 39:5–36 now provide.

The judgment of the county court is therefore reversed and the matter remanded to it for resentencing in accordance with this opinion.

*For reversal and remandment*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL and SCHETTINO—6.

*For affirmance*—None.