THE KANSAS MASONIC HOME, *Appellant*, v. THE
BOARD OF COUNTY COMMISSIONERS OF THE COUNTY
OF SEDGWICK *et al.*, *Appellees*.

No. 16,554.

SYLLABUS BY THE COURT.

1. TAXATION — *Exemption—Constitutional Provision—Purpose
for which Property is Used.* The exemption from taxation
declared by section 1 of article 11 of our state constitution is
a property exemption based solely upon the exclusive use
made of the property. It is not an exemption to the owner-
ship, and the character of the owner as to being benevolent
or otherwise is not a test.

2. —— *Property Used Exclusively for Benevolent or Chari-
table Purposes.* If property is used exclusively for benevo-
lent or charitable purposes it is exempt, regardless of the
value or area of the property, and it is not requisite that the
charity dispensed be purely public, or even public. If the
property be exclusively used for charitable purposes, the
exemption is not defeated although only the members of
certain societies and their relatives are eligible to become
recipients of the charities dispensed.

Appeal from Sedgwick district court; THOMAS C.
WILSON, judge. Opinion filed February 12, 1910. Re-
versed.

STATEMENT.

THE appellant filed its petition in the district court
of Sedgwick county against the board of county com-
missioners, county clerk and county treasurer of that
county. In its petition the plaintiff alleges that it is a
corporation duly organized and existing under the laws
of the state of Kansas, and also alleges the official
character of the defendants; that the plaintiff is the
owner of a tract of land of about fifteen acres, duly de-
scribed, upon which it has valuable and lasting im-
provements, consisting of buildings used for the pur-
pose of maintaining a home in the state of Kansas for
Master Masons, their wives, widows and children and

children of the members of the Eastern Star, and a chapel used exclusively for religious purposes in connection with the home, and that it is possessed of personal property, such as household furniture and supplies; that all of the real estate, buildings and personal property are kept and used solely for the maintenance, comfort, moral and religious training and education of the members of the home; that unless provided for and taken care of by the plaintiff all of the members received in the home would be objects of charity, to be cared for by and at the expense of the several counties of the state from which they were sent to the home; that the members of the home are employed, according to their age and capacity, in some household, mechanical or agricultural work, so as to teach them to honor labor and industry and gradually to prepare them for practical trades and employments; that the sole object and purpose of the plaintiff is to care for and maintain indigent, aged persons and helpless children, and that all of the property has been and is used exclusively for such religious, benevolent and charitable purposes; that no income whatever is derived from the use of the property, and no charge is made to the members of the home for care or maintenance, and that the children are provided with all proper educational facilities and with religious and moral training without any charge therefor; that upon the death of any member of the home the plaintiff, at its own expense, gives the deceased member a proper burial in a lot provided and paid for by it.

The petition then alleges the assessment of the property at the total valuation of $41,620; that the county clerk threatens to, and is about to, spread upon the tax rolls of Sedgwick county such assessment, and that taxes will be levied upon the property and it will be sold unless restrained by the order of the court; that the assessment of the property and the threatened

spreading of the same upon the tax rolls of the county will be illegal and void, as will also the collection of such tax. It prays for a temporary injunction, and, upon the hearing of the case, a permanent injunction.

Summons was served upon the defendants and a temporary injunction was granted. Thereupon the defendants filed the following answer:

"Comes now defendants, deny each and every allegation contained in plaintiff's petition, except as hereinafter admitted.

"Defendants admit that C. N. Cartwright is county clerk of Sedgwick county, Kansas, as alleged in said petition; that E. Webb is county treasurer of Sedgwick county, Kansas, as alleged in said petition; that said plaintiff is a corporation, duly created, organized and existing under and by laws of the state of Kansas; that said plaintiff owns the real estate and personal property described in said petition; that said plaintiff's sole object is to maintain a home in the state of Kansas for Master Masons, their wives, widows and children and children of the Eastern Star; that no income whatever is derived from said property or charge made to the members of said home; that members of tender years are educated, and that plaintiff provides proper educational facilities for said minors without expense to said minors therefor; that the county assessor, George W. Bristow, has certified to the county clerk the proper assessment for taxes for the year 1908, as alleged in said petition; that said county clerk aforesaid threatens and intends to spread upon the tax rolls of Sedgwick county said assessment; that said taxes will be collected by the county treasurer."

Thereafter the case came on duly for trial and the plaintiff offered its evidence. The defendants offered no evidence, and both parties submitted the case to the consideration of the court, which rendered judgment refusing a permanent injunction, and adjudged that the plaintiff pay the costs of the action. Thereupon the plaintiff filed a motion for a new trial, on the grounds that the judgment was not supported by, but

was contrary to, the evidence and was contrary to law. The motion was denied, and the plaintiff appeals.

*D. M. Dale,* and *S. B. Amidon,* for the appellant; *T. F. Garver,* of counsel.

*W. A. Ayres,* for the appellees; *George McGill,* of counsel.

*W. S. Glass,* for the tax commission.

The opinion of the court was delivered by

SMITH, J.: The plaintiff's claim for the exemption of its property from taxation must be justified if at all by section 1 of article 11 of the constitution of Kansas. The satutory provision relating to such exemptions is found in the third subhead of section 2 of chapter 408 of the Laws of 1907. In the statute the area of land exempt from taxation to any scientific, literary or benevolent association used for the specified purposes is limited to five acres. The constitutional provision, however, is not so limited. It provides:

"The legislature shall provide for a uniform and equal rate of assessment and taxation; but all property used exclusively for state, county, municipal, literary, educational, scientific, religious, benevolent and charitable purposes, and personal property to the amount of at least two hundred dollars for each family, shall be exempted from taxation."

It will be observed that the constitutional exemption depends solely upon the exclusive use of the property, and not upon the ownership nor the character, charitable or otherwise, of the owner. It is a property exemption. If it be conceded that the property of the plaintiff is used exclusively for benevolent and charitable purposes, which fact or conclusion of fact seems to be admitted in the answer of the defendants, then it must be said that there has been no decision of this court which determines the controversy. The decisions of the courts of last resort of other states are advisory,

but there is such contrariety of opinion therein that such decisions should have little weight except for the reasoning advanced.   In general, the line of division in these decisions is upon the question whether the use of the property in question constitutes a public or a private charity.   Those courts which hold that ʼproperty used principally for the benefit only of persons in some way related to the members of a society (an artificial class, as it is called) is not exempt do so generally for the reason that the constitution or statute law governing the case provides that the charity shall be a purely public charity.   This is true of Pennsylvania, Ohio, Minnesota, Maine, and perhaps other states.

It seems to be contended by the defendants that, to be exempt, property in this state used for benevolent and charitable purposes should not only be for the purposes of public charity, but that the provisions of section 1 of article 7 of the constitution excludes all institutions used for charitable purposes except such as are under the supervision of the state.   That section reads:

"Institutions for the benefit of the insane, blind, and deaf and dumb, and such other benevolent institutions as the public good may require, shall be fostered and supported by the state, subject to such regulations as may be prescribed by law.   Trustees of such benevolent institutions as may be hereafter created shall be appointed by the governor, by and with the advice and consent of the senate."

This contention is clearly untenable, as it would debar from exemption any institution founded and supported entirely by private subscription or donation, although its beneficence might be purely public as to its recipients, unless the institution was turned over to the state.   In the reported decisions we have found no support for this contention, except perhaps an intimation in one decision.

The reasons assigned by the several courts for their diverse views are practically as follow:  Those courts which do not place their decisions squarely upon the

provisions of their constitutions have adopted the principle that where the constitution provides that taxation shall be uniform and equal no property should be exempt by act of the legislature from taxation unless especially provided for by the constitution; that the exemption of any property from taxation, except for the public benefit, is an injustice to all other taxpayers; that property can not be exempt from taxation for the public benefit unless all of the public is or may possibly be benefited thereby, and that any arbitrary division of the beneficiaries of a charity by reason of their relation to a society which may or may not be joined is not for the benefit of such portion of the public as does not see fit to join the society. On the other hand, it is contended that the various charities which provide for any portion of the public, however arbitrary the rule of participation therein may be, relieve the public and all taxpayers of so much of the public burden, and are thus a benefit to all; that the numerous so-called private charities in the aggregate provide for as great or a greater portion of the poor and dependent which the state is under obligation to support than do the so-called public charities.

Perhaps the best-considered case upon the subject is *Phila., Appellant, v. Masonic Home,* 160 Pa. St. 572. The constitution of the state of Pennsylvania adopted in 1874 exempted "institutions of purely public charity" (p. 577) from all taxation. The Masonic Home was granted a special charter by the legislature of that state, and was thereby granted the "right to take and hold, by purchase, gift or devise, real and personal estate, free from all taxation for the purposes hereinafter named, and to sell, convey or exchange the same at pleasure." (Page 573.) The action was brought by the city of Philadelphia to recover taxes on the Masonic Home corporation. Mr. Justice Dean delivered the opinion of the majority of the court and Mr. Justice Williams the dissenting opinion, in which Mr. Justice

Green concurred. The syllabus, as reported in 40 Am. St. Rep. 736, tersely and clearly defines terms which are controverted in this case. It reads:

"A charity is a gift to promote the welfare of others.

"A charity may restrict its admissions to a class of humanity and yet be public in its nature, and so long as the classification is determined by some distinction which involuntarily affects or may affect any of the whole people, although only a small number may be directly benefited, the charity is public.

"When the right to share in the benefits of a charity depends on the fact of voluntary association with some particular society, while all not members of such society are excluded, the charity is not purely public in its nature.

"A home for the relief of aged and indigent Masons only, though supported by voluntary contributions, without charge to the beneficiaries and without profit to the institution or its officers, is not a 'purely public charity,' and is not exempt from taxation under a constitutional provision exempting 'institutions of purely public charity' from all taxation."

In the majority opinion we find the following language:

"The legal definition of the word 'charity' has been the subject of much discussion in the courts, especially in those of England, but its meaning here, discarding all technical sense, is 'a gift to promote the welfare of others.' The appellee clearly is a charity. It provides for and maintains in the 'Masonic Home' indigent, afflicted and aged Freemasons. This, too, from voluntary contributions, without charge to the beneficiaries, and with no profit either to the corporation or to its officers. . . . 'no one is benefited except the inmates; they are fed, clothed, and lodged during life, and buried at death at the expense of the home.' Of course, if this be not purely charity, nothing is." (160 Pa. St. 577, 578.)

The opinion then proceeds to hold that it is not a purely public charity. The contention is further illuminated by this excerpt from the dissenting opinion:

"It is conceded by my brethren that this is a charita-

55—81 KAN.

ble object, and that the home is a charity. The point taken is that it is a private, and not a public charity. It was founded and endowed, as the evidence clearly shows, and it is maintained, by voluntary gifts. Out of the contributions made to it the grounds and buildings have been paid for, and the maintenance of its inmates provided. It is supporting, nursing, and caring for thirty or more aged men who would otherwise be dependent upon the almshouse, or other forms of charity supported by taxation. No profit is possible to any person, corporation or society. The entire plant, and the stream of voluntary gifts on which it is dependent, are devoted wholly to the charitable work described in the constitution and by-laws of the home.. The contributors get nothing for their money but the approval of their consciences, and the knowledge that they are increasing the happiness of the aged, indigent and afflicted.

"I see nothing private about such a charity. It is not limited in its work to the donors or their children. It brings no pecuniary benefit or return. It is done in relief of public taxation, and in the interest of humanity, and that brotherly love that becomes the children of a common father." (160 Pa. St. 585.)

It is evident that had the constitution of Pennsylvania read like the constitution of Kansas, or if that court had held as does this court that the legislature has power to extend the constitutional exemption, the unanimous opinion of the court would have been that the property in question was exempt from taxation. Several cases from the same court are indeed cited in the dissenting opinion in which it was claimed that similar property had been held exempt from taxation.

It is interesting also to note that the supreme court of Kentucky, in *Widows' and Orphans' Home of O. F. v. Commonwealth*, 126 Ky. 386, under a constitution substantially like the Pennsylvania constitution, holds, as stated in the syllabus in 16 L. R. A., n. s., 829:

"That the benefits of a home for the support of widows and orphans are confined to those of members of a particular secret society does not deprive it of the character of a purely public charity within the meaning of a constitutional tax exemption."

An erudite and very lengthy footnote is appended to this case in 16 L. R. A., n. s., 829, which it is believed cites practically all of the authorities on the subject to date, and a reference to which will excuse the citation of numerous authorities here. In conclusion the commentator says:

"The fundamental principle which makes taxation the rule, exemption the exception, and requires that immunity from sharing the common burdens shall be granted only to those who assume duties which the government itself should discharge, affords the first test to determine whether a particular claimant of exemption from taxation is entitled to be freed from the burden resting upon the entire community.

"The duties of government ordinarily assumed by private persons embrace the care and support of the aged, the sick, the infirm, the needy, the helpless, the suffering, the distressed; the promoting of the moral and physical health and the education of the citizen; and the burial of the dead. And statutes which exempt from taxation any part of the community usually grant immunity to such persons as have undertaken the performance of one or more of these duties. It is a general principle that all such statutes are to be strictly construed. It is therefore of primary necessity for the claimant of exemption from taxation to bring itself within the exact terms of the relieving law. If, then, the statute exempts alone institutions of purely public charity, the claimant must not only be a charitable institution, but its charities must be purely public charities. If property, rather than its owner, is exempted from taxation if used for a charitable purpose, then the property must be devoted to a charitable use. If exemption from taxation is conferred upon property rather than upon its owners, because its use and product is given over to charity, it is manifest that the character of the owner as a charitable society is immaterial; and equally is it plain that it is an unimportant consideration that only a special class of persons receives its bounties. Charity is equally charity when given exclusively to Freemasons and their kin, superannuated Methodist clergymen, Protestant Episcopal orphans, or Roman Catholic nuns.

"It follows from this that when property otherwise

exempt from taxation is devoted to the purposes of a particular society it will still be exempt in two classes of cases: First, when the exemption is accorded the property instead of the owner, when devoted to purposes named in the exempting statute, and, second, when the particular society is one of the class mentioned in the exemption statute as entitled to immunity. It will, of course, often happen in the first class of cases that the fact that the property is held and used for purposes which exempt it from taxation will be disputed; and, in the second class, it will be denied that the claimant is one of the favored class. And it will sometimes occur that the same facts will be oppositely construed in different jurisdictions. The governing principle will not thereby be impugned." (Page 851.)

Before the adoption of our constitution other states had constitutional provisions upon this subject which had theretofore been the subjects of litigation, and it is to be presumed that the framers of our constitution had given attention to this subject, and that the people of the state in adopting it adopted it with its plain and ordinary meaning. The language employed in section 1 of article 11 of the constitution is plain and unambiguous, and there is no reason for reading into it or reading out of it a single word. Neither the words "purely public" nor the word "public" is found therein as a limitation of "benevolent and charitable purposes." We hold no license to amend its terms, and take it to mean what it plainly says—that property that is used exclusively for benevolent or charitable purposes is exempt from taxation.

The controlling question, then, in this case is whether the property of the Masonic Home is used exclusively for benevolent and charitable purposes. The words "benevolent" and "charitable" are nearly synonymous in meaning, and as frequently used are entirely so, especially when applied to purposes or institutions. Webster's Universal Dictionary thus defines "charitable": "Pertaining to charity; springing from charity, or intended for charity, benevolent; as a charitable institution; a charitable purpose."

Considerable evidence was introduced in this case to show that the entire property of the home is used for the support, care and nursing of poor and dependent aged persons, and for maintaining, nurturing and educating young persons unable to care for themselves; that all this is done without any charge to the inmates, and without any profit or expectation of profit to the owner of the home, the plaintiff corporation. As before said, there is no conflict in the evidence. It shows that the home is supported as follows: The members of the subordinate Masonic lodges in the state pay certain prescribed dues to their respective lodges; from this fund so raised each subordinate lodge contributes one dollar for each of its members to the grand lodge of the state; of the fund thus created the grand lodge donates 50 per cent to the support of this home, and this, with such private donations as are made to the home, constitutes its entire support. It appears that the beneficiaries in the home are principally aged and indigent members of the order and of the Eastern Star, and their dependent widows and children. All of the evidence indicates that the benefits extended to the inmates of the home are not extended in consideration of any payments made by the inmates or by their relatives, and that no person in any way connected with or related to any member of the Masonic fraternity in the state has any legal right to enter the home or to receive the charities therein extended. In other words, the evidence, without conflict, proves that the home is conducted as a pure charity, adding thereto educational and religious opportunities and advantages.

There is nothing to indicate that the trial court decided the case in favor of the defendants on any question of fact as to the character of the use of the property, but it is evident that the court took a different view of the law than is herein set forth. Applying the law herein indicated to the facts as shown by the uncontroverted evidence, the judgment rendered by the

trial court is not supported by the evidence. The judgment is therefore reversed for further proceedings in accordance with the views herein expressed.

JOHNSTON, C. J., dissenting.

MASON, J., not sitting.