No. 46,006

BOARD OF TRUSTEES OF THE KANSAS EAST CONFERENCE OF THE UNITED METHODIST CHURCH, formerly The Kansas Conference of The Methodist Church, *Appellant*, v. KENNETH M. COGSWELL, County Clerk of Shawnee County, Kansas; DEAN E. YINGLING, County Treasurer of Shawnee County, Kansas; and JOHN R. HILLER, RICHARD B. HANGER (J. W. TOLIN substituted for RICHARD B. HANGER); and MAURICE L. TOWLE, Board of County Commissioners, Shawnee County, Kansas, *Appellees*.

(473 P. 2d 1)

Opinion filed July 17, 1970.

*David H. Fisher,* of Fisher, Patterson, Sayler and Smith, of Topeka, and *E. Gene McKinney,* of Marshall, Hawks, McKinney and Hundley, of Topeka, argued the cause and were on the brief for the appellant.

*Robert D. Hecht,* of Scott, Quinlan, Hecht and Baxter, of Topeka, argued the cause and was on the brief for the appellees.

*Emmet A. Blaes* and *J. Francis Hesse,* of Jochems, Sargent and Blaes, of Wichita, were on the brief for The Kansas Catholic Conference, *amici curiae.*

*Ralph F. Glenn,* of Glenn, Cornish and Leuenberger, of Topeka, was on the brief for The Kansas Christian Churches and The Lutheran Church-Missouri Synod, *amicus curiae.*

The opinion of the court was delivered by

SCHROEDER, J.: This is an action to recover taxes paid under protest on the administrative office building of the United Methodist Church in Kansas located in Topeka. The trial court denied relief and appeal has been duly perfected.

The underlying question is whether the church property in question is exempt from taxation under Article 11, Section 1 of the Kansas constitution and K. S. A. 79-201, *Third.*

There is no dispute in the facts. The parties stipulated that the use of the property in question and the improvements thereon were covered by the testimony of W. McFerrin Stowe, Robert Kendall, Roger Biddle and Glen Matthews.

The real estate and improvements occupied by the Kansas East Conference of the United Methodist Church, formerly the Kansas Conference of the Methodist Church, are owned by the Kansas East Conference of the United Methodist Church, herein referred to as the "Conference," by and through its board of trustees.

The building is used for the offices of the Bishop of the Methodist Church of the State of Kansas; the District Superintendent of the Topeka District of the Methodist Church; the Executive Secretary of the Interboard Council of the Methodist Church; the Assistant Secretary of the Interboard Council of the Methodist Church for Children; the Superintendent of Ministry of the Methodist Church for the State of Kansas; and the Superintendent of Campus Ministry of the Methodist Church for the State of Kansas. All of the foregoing persons who occupy the building are ministers of the Methodist Church, with the exception of their secretaries, and devote their efforts to carrying on the ministry and work of the Methodist Church.

The tract and building are located in Topeka, Kansas, adjacent to the Lowman United Methodist Church on West Fifteenth Street immediately west of Gage Boulevard.

It was stipulated by the parties that the Conference, by and through its board of trustees, purchased the real estate in July, 1966, and commenced the construction of the building thereon in July, 1967, which it now occupies. The property was placed on the tax rolls of Shawnee County, Kansas, and a real property tax was assessed against it in the amount of $1,642.42 for the year 1968. This sum of money was paid under protest by the plaintiff on December 17, 1968, and on December 26, 1968, this action was filed to recover the taxes paid under protest.

The building houses the following administrative officers and their staff:

W. McFerrin Stowe, Bishop of Kansas, who assigns the ministers to the churches and gives guidance in the aspects of church life to the Methodist colleges and universities. As chief pastor, he preaches almost every Sunday all over the state.

Rev. Robert Kendall, the Executive Secretary of the Conference,

who serves as a "minister of ministers," and trains pastors and leaders to work on the board of missions, evangelism and education. James Uhlig, assistant to Rev. Kendall, works with the youth programs and plans summer camps and institutes.

Roger Biddle, District Superintendent, who is responsible for 89 churches in the Topeka district and is concerned with the assignment of pastors and any counseling they may need concerning their lives and their work. He preaches nearly every Sunday.

Glen Matthew, Area Superintendent of Ministry, who works in the field of career development for the ministers. He preaches sermons by invitation.

This Conference contains some 900 churches and 650 ministers in Kansas. No persons other than those associated with the Kansas Conference ever use the building. It is never rented out to any other persons. All financial support of the Conference comes from gifts of the local church members, and the Conference treasurer pays the expenses of the building and the salaries of those who work in the building from such funds. There is no responsibility at the Conference level to raise funds; the Conference has no assets other than what the colleges may have; there is no management of income-producing properties; and no one in the building participates in the investment of church funds.

The appellant contends the property is used exclusively for religious purposes and is not a center for fund raising or the financial management of church assets.

Article 11, Section 1 of the Kansas constitution provides:

"System of taxation; classification; exemption. The legislature shall provide for a uniform and equal rate of assessment and taxation, except that mineral products, money, mortgages, notes and other evidence of debt may be classified and taxed uniformly as to class as the legislature shall provide. *All property used exclusively for* state, county, municipal, literary, educational, scientific, *religious,* benevolent and charitable *purposes,* and all household goods and personal effects not used for the production of income, shall be exempted from taxation." (Emphasis added.)

Consistent with the above cited constitutional provision the legislature enacted K. S. A. 79-201, which in material part provides:

"That the property described in this section, to the extent herein limited, shall be exempt from taxation:

"*First.* All buildings used exclusively as places of public worship, as public schoolhouses or both, with the furniture and books therein contained and used exclusively for the accommodation of schools and religious meetings, together

with the grounds owned thereby if not leased or otherwise used with a view to profit.

. . . . . . . . . . . . . . .

"*Third.* All real property, and all tangible personal property, actually and regularly used exclusively for literary, educational, scientific, religious, benevolent or charitable purposes: *Provided,* That this exemption shall not apply to such property, not actually used or occupied for the purposes set forth herein, nor to such property held or used as an investment even though the income or rentals received therefrom is used wholly for such literary, educational, scientific, religious, benevolent or charitable purposes."

(K. S. A. 1968 Supp. 79-201, *First* and *Third,* here applicable, are identical with K. S. A. 79-201 insofar as they are material to this case. K. S. A. 79-201 was last amended by L. 1969, ch. 429, § 1.)

The trial court after reviewing Kansas decisions concluded:

". . . that property is exempt from taxation for religious or literary or educational or scientific or benevolent and charitable purposes only if it is used *directly, immediately,* and *exclusively for such purposes.* This would require that religion be *directly* dispensed from the property or that the property itself be used *directly* in the dispensing of charity or education. It is not enough that the property be used only indirectly for teaching religion or for dispensing charity or for accomplishing any of the other exempted purposes."

Later in its memorandum opinion the trial court stated:

". . . that in order for a building in Kansas to be exempt from taxation as being used exclusively for religious purposes the property in question must be used by a religious society or body of persons *as a stated place of public worship or as a Sunday school or as a place where religious instruction is regularly conducted.* Property which is used strictly for administrative purposes, for general supervision of ministers, for supervising their professional careers, for counseling and advising officials of educational institutions operated by a church body, are not used exclusively, directly and immediately for religious purposes within either the constitutional provision or the provisions of K. S. A. 79-201. Such property is used only *indirectly* for such purposes, and does not qualify for exemption from taxation."

The real question here to be determined is whether the property in question is "actually and regularly used exclusively for . . . religious, . . . purposes."

It is firmly established in this jurisdiction that constitutional and statutory provisions exempting property from taxation are to be strictly construed and all doubts resolved against the exemption. (*Washburn College v. Comm'rs of Shawnee Co.,* 8 Kan. 344; *Griswold v. Quinn,* 97 Kan. 611, 156 Pac. 761; *Manhattan Masonic Temple Ass'n v. Rhodes,* 132 Kan. 646, 296 Pac. 734; and *Clements v. Ljungdahl,* 161 Kan. 274, 167 P. 2d 603.)

Furthermore, the question of ownership or title to the property is

not a determining factor. The exemption from taxation declared by Article 11, Section 1 of our constitution is a property exemption based solely upon the exclusive use made of the property. (*Masonic Home v. Sedgwick County*, 81 Kan. 859, 106 Pac. 1082; and *Clements v. Ljungdahl*, supra.)

The question is not whether the property is used *partly* or even *largely* for the purposes stated in the exemption provisions, but whether it is used *exclusively* for those purposes. (*State, ex rel., v. Security Benefit Ass'n*, 149 Kan. 384, 87 P. 2d 560, and cases cited therein; and *Clements v. Ljungdahl*, supra.)

As a preliminary to further discussion of the constitutional and statutory provisions here in question, a definition of the word "religious" is in order. It is the adjective form of the word "religion" which has been defined as being an apprehension, awareness or conviction of the existence of a supreme being controlling one's destiny. (*Sunday School Board of the Southern Baptist Convention v. McCue*, 179 Kan. 1, 6, 293 P. 2d 234.) In *McMasters v. State*, 21 Okla. Crim. 318, 207 Pac. 567, 29 A. L. R. 292, the court said:

"It has been held that 'religion' has reference to man's relation to Divinity; to reverence, worship, obedience, and submission to the mandates and precepts of supernatural or superior beings. In its broadest sense it includes all forms of belief in the existence of superior beings, exercising power over human beings by volition, imposing rules of conduct with future rewards and punishments. Davis v. Beason, 133 U. S. 333, 10 Sup. Ct. 299, 33 L. Ed. 637; 4 Words and Phrases, Second Series, p. 253; People v. Board of Education, 245 Ill. 334, 92 N. E. 251, 29 L. R. A. (N. S.) 442, 19 Ann. Cas. 220; State v. Amana Society, 132 Iowa, 304, 109 N. W. 894, 8 L. R. A. (N. S.) 909, 11 Ann. Cas. 231." (pp. 322, 323.)

In *Davis v. Beason*, 133 U. S. 333, 33 L. Ed. 637, 10 S. Ct. 299, the United States Supreme Court said:

"The term 'religion' has reference to one's views of his relations to his Creator, and to the obligations they impose of reverence for his being and character, and of obedience to his will. . . ." (p. 342.)

It is apparent the term "religious" found in the constitution and statutory provisions under consideration has been used in our decisions in the broad sense indicated by the foregoing definitions.

The word "exclusively" as used in the constitutional and statutory provisions under consideration has been defined in *Sunday School Board of the Southern Baptist Convention v. McCue*, supra, where the court said:

"In connection with the word 'exclusively', plaintiff seems perplexed because

that word has not been explicitly defined in any of our previous decisions, and it quotes a portion of a definition from Webster's New International Dictionary, Second Edition. The word is an adverb form of the verb 'exclude' defined in the above dictionary as 'To shut out; to hinder from entrance or admission; to refuse participation, enjoyment or inclusion,' and as used in the adverb form means, among other things, to the exclusion of all others, without admission of others to participate, only, solely, purely. We think it implicit in our many decisions where the word has been used, it is in the sense that the use made must be only, solely, and purely for the purpose stated in our constitution, and without admission to participate in any other use. Numerous definitions of like content may be found in Words and Phrases, Permanent Edition. . . ." (p. 5.)

It is conceded there is no Kansas case directly in point on the question here presented. Here the property is used by a religious organization as administrative offices for a vast number of churches located throughout the state of Kansas. Some of our decisions, principally *Mason v. Zimmerman*, 81 Kan. 799, 106 Pac. 1005; *Nuns of St. Dominic v. Younkin*, 118 Kan. 554, 235 Pac. 869; and *Defenders of the Christian Faith, Inc. v. Horn*, 174 Kan. 40, 254 P. 2d 830, tend upon first blush to support the position of the trial court—that the provisions of the constitution and the statute here in question exempt from taxation only such property as it used *"directly, immediately* and exclusively" in dispensing charity or religion as the case may be.

Stripped of unnecessary language, and as applied to the facts in this case, Article 11, Section 1 of the Kansas constitution exempts all property used exclusively for religious purposes. While the legislature can broaden the exemption permitted by the constitution, it cannot limit or curtail the constitutional provisions. (*Ottawa University v. Stratton*, 85 Kan. 246, 116 Pac. 892.)

The legislature in 79-201, *First* and *Third*, heretofore quoted, has spoken on the subject of exemptions of property from taxation used for religious purposes under the provisions of the constitution here in question.

For many years following the original enactment of the tax exemption statute by the legislature in 1862 (L. 1862, ch. 198) the only provision in the statute pertaining to an exemption of property from taxation for religious purposes was contained in 79-201, *First,* as it now appears. It was not until 1963 (L. 1963, ch. 456, § 1) that 79-201, *Third,* as it now appears, was amended to include property exclusively used for religious and educational purposes. Prior to 1963 paragraph *Third* provided only for the

exemption from taxation of all buildings belonging to scientific, literary and benevolent associations used exclusively for scientific, literary and benevolent purposes.

On the issue here presented the provisions of 79-201, *Third,* exempting from taxation all real property actually and regularly used exclusively for religious purposes, is identical with the constitutional provision authorizing an exemption from taxation of all property used exclusively for religious purposes.

The situation here presented is parallel to a very recent case in which the United States Supreme Court upheld the constitutionality of exempting church properties from general taxation. In *Walz v. Tax Commission,* 397 U. S. 664, 25 L. Ed. 2d 697, 90 S. Ct. 1409, Chief Justice Burger noted that previous language used in opinions of the United States Supreme Court tended to reflect too restrictive an interpretation of the first amendment. He said:

". . . The considerable internal inconsistency in the opinions of the Court derives from what, in retrospect, may have been too sweeping utterances on aspects of these clauses that seemed clear in relation to the particular cases but have limited meaning as general principles." (p. 668.)

None of the cases relied upon by the trial court concerning the tax exemption of property used for religious or educational purposes was decided after the 1963 amendment of 79-201, *Third.*

While the foregoing observation may be significant in that it suggests the legislature intended a change in granting a tax exemption for all property used exclusively for religious and educational purposes, another observation may be made which is even more significant.

In *Mason v. Zimmerman,* supra, the court was confronted with a claim for tax exemption on property used by a Masonic Lodge on the ground that it was used exclusively for charitable and benevolent purposes. In reversing the trial court and denying the tax exemption for such property, the court said:

". . . the provisions of section 1 of article 11 of the constitution of Kansas that 'all property used exclusively for . . . benevolent and charitable purposes . . . shall be exempt from taxation' must be strictly construed, as should the similar provision of section 2 of chapter 408 of the Laws of 1907. So construed, these provisions exempt from taxation only such property as is used exclusively, *directly and immediately* in dispensing charity. . . ." (p. 807.) (Emphasis added.)

This appears to be the first time in our Kansas decisions when the above quoted words in italics are stated as a principle of law

which purports to amend Article 11, Section 1 of the Kansas constitution by limiting its scope. Significantly, the court was there concerned with the statutory provision, 79-201, *Third,* as it appeared prior to the 1963 amendment.

The source of the words "directly" and "immediately" in the *Mason* case was *St. Mary's College v. Crowl, Treasurer, &c.,* 10 Kan. 442. The opinion was written by Valentine, J., in 1872. (The term "exclusively" first appeared in L. 1866, ch. 118, § 3 [1st], in connection with Article 11, Section 1 of the Kansas constitution.) In *Crowl* an action was brought to restrain the collection of certain taxes levied upon property claimed to have been used exclusively for educational purposes. The property in question was 320 acres adjoining the college grounds of St. Mary's College. In the cultivation of this tract of land a portion of the products was consumed at the college, but other products were sold and the funds used for educational purposes. In the opinion it was stated the facts disclose "the property was used more or less mediately or remotely for educational purposes. But none of it was used exclusively, directly, and immediately for such purposes." (p. 448.) A careful reading of the opinion will indicate the terms "directly" and "immediately" used in the opinion were explanatory and designed to be descriptive of the factual situation. It is clear in the opinion the rule applied by the court to exempt property from taxation was that it must be used "exclusively for educational purposes." In clarifying the court's position it was said:

". . . And no property is exempt because it is used for educational purposes unless it is *exclusively* so used. (Const., art. 11, § 1.) Property used partially for educational purposes, and partially for some other purpose, is not exempt. Even property used mainly for educational purposes, but not exclusively, is not exempt. . . . The constitution does not exempt a farm used to raise produce to sell to other persons to obtain means whereby to purchase articles of food and clothing to feed and clothe the students, professors, and missionaries connected with a school. . . ." (pp. 449, 450.)

Presumably the words "directly" and "immediately" used in *Mason v. Zimmerman,* supra, have been construed in the same sense they were used in the *Crowl* case, because two subsequent cases involving Masonic property relied upon *Mason v. Zimmerman,* supra, without quoting its language. In *Manhattan Masonic Temple Ass'n v. Rhodes,* 132 Kan. 646, 296 Pac. 734, exemption of property from taxation claimed to have been devoted to benevolent and charitable purposes was denied because the property "was not used

exclusively for benevolent and charitable purposes" so as to bring it within constitutional exemption. (p. 650.)

Similarly, in *Clements v. Ljungdahl*, supra, the writ was denied in an original mandamus proceeding wherein property known as the Masonic Temple was taxed and the tax held to be proper. There *Mason v. Zimmerman*, supra, was discussed without reiterating the rule stated in *Mason v. Zimmerman*, supra, but stating, "Under prior decisions and particularly *Manhattan Masonic Temple Ass'n v. Rhodes*, supra, a construction of the constitutional provision involved has now been long established." (p. 280.)

Inferentially, the Supreme Court had disapproved the words "directly" and "immediately" used in stating a principle of law in some of its prior decisions on tax exemption in the case of *Sunday School Board of the Southern Baptist Convention v. McCue*, 179 Kan. 1, 293 P. 2d 234. The court there said:

"Plaintiff further states that in construing a constitutional provision a court is governed not by what the framers might have meant to say but by what they did say, and that the language of the constitutional provision under consideration is clear and unambiguous. Plaintiff also directs attention to some of our decisions where it has been said that property to be exempt must be used *directly, immediately* and exclusively and argues that these decisions expand the constitutional mandate. We shall not dwell on the lanugage used nor discuss whether the italicized words were used only as emphasis, for, in any event the three cases cited, *i. e., Washburn College v. Comm'rs of Shawnee Co.*, 8 Kan. 344; *St. Mary's College v. Crowl, Treasurer, &c.*, 10 Kan. 442; and *Mason v. Zimmerman*, 81 Kan. 799, 106 Pac. 1005, are but a small part of our many decisions dealing with exclusive use." (p. 6.)

The *Washburn College* case in the above quotation is incorrectly cited, but other cases could have been cited.

The trial court relied upon *Defenders of the Christian Faith, Inc. v. Horn*, 174 Kan. 40, 254 P. 2d 830. There an original proceeding in mandamus was brought to compel the removal of plaintiffs' property from the tax rolls of Sedgwick County on the ground that the Defenders of the Christian Faith were using the property exclusively for religious purposes.

In the opinion the court said the only question before it was whether the property sought to be exempt was used exclusively for religious purposes. The property was alleged to be the headquarters of the Defenders of the Christian Faith which the court said is not a church as that term is ordinarily understood. In disposing of the case the court simply cited a number of prior decisions which it said "clearly establish these rules and sustain our conclusion and that

of our commissioner." (p. 44.) The commissioner's findings of fact and conclusions were appended to the opinion.

The commissioner's findings disclosed that some of the activities conducted on the property were political and not religious, and that some were neither of a political nor a religious nature. It therefore found *such use was not devoted exclusively to religious matters.* The commissioner concluded that the revenue derived from the sale of books and merchandise was used for the sale of other books and merchandise for resale, and for activities of the corporation other than missionary activities, and that such revenue was not exclusively used for religious purposes. The commissioner concluded the building owned by the Defenders of the Christian Faith was not, within the constitution and statutory provisions of the state of Kansas, "used exclusively, immediately and directly for religious purposes," and such building was not exempt from taxation. (p. 52.)

Factually, the *Defenders* case is analogous to *St. Mary's College v. Crowl, Treasurer, &c,* supra. The manner in which the opinion is written does not warrant the conclusion that it holds property used as the headquarters building of the Defenders of the Christian Faith to carry on religious work is not tax exempt.

The *Defenders* case was discussed in *Kansas State Teachers Ass'n v. Cushman,* 186 Kan. 489, 351 P. 2d 19, without giving significant consideration to the words "direct" and "immediate." The court concluded in the *Kansas State Teachers Ass'n* case:

". . . Thus, the inescapable conclusion is that the headquarters building is used, in part at least, for the individual benefit of the teacher-member; consequently, it is not used directly, immediately, solely, and exclusively for educational purposes as those terms are defined by the decisions of this court so as to entitle the property to exemption from taxation under Article 11, Section 1 of our constitution." (p. 501.)

The concluding words above used to show the property was not used exclusively for educational purposes were not designed to give the constitutional tax exemption a new dimension.

An analysis of the factual situations in cases where the words "direct" and "immediate" have been used with some force of persuasion indicates the words were employed to describe a situation where the property was held or used, either in part or in whole, for investment to produce income which was in turn used by the organization for purposes which it claimed were tax exempt. Under these circumstances, a strict construction of the tax exemption provisions led the court to say the property was being used indi-

rectly and not directly or immediately for the tax exempt purpose. Thus, it was not entitled to tax exemption because the property was not used exclusively for the tax exempt purpose.

This condition was specifically added in the proviso to K. S. A. 79-201, *Third,* by the 1963 amendment, wherein it received legislative recognition as going beyond the tax exempt authorization of the constitution.

Where prior decisions have used the words "directly" and "immediately," it cannot be said that their application was necessarily required by the constitution as a basis for the decision. The words were explanatory or descriptive of the facts rather than controlling in the decision-making process, and their use must be considered in the light of the facts in the particular case in which they appear. To interpret "exclusively" to mean only that which is also "directly" and "immediately" used for a tax exempt purpose is unrealistic and would in substance add a new dimension to Article 11, Section 1 of the Kansas constitution limiting the tax exemption guaranteed by the constitution.

Turning now to K. S. A. 1968 Supp. 79-201, here applicable, it must be observed that it specifically lists thirteen different situations where tax exemptions are granted by the legislature, and no more than one ground is necessary to establish the exemption. The statute does not use the word "and" between the various grounds. Therefore, an exemption may be granted under the first paragraph, and an exemption may also be granted under the third paragraph of that section. It is not necessary to combine the requirements of both paragraphs. Either one is sufficient. The decision in this case is therefore controlled by the constitutional provision and 79-201, *Third.* It should be noted the *Defenders* case and *Kansas State Teachers Ass'n v. Cushman,* supra, were decided prior to the 1963 amendment of 79-201, *Third.*

Under 79-201, *Third,* it is not necessary for the property to be used as a place of public worship in order to be exempt. Property that is used exclusively for religious purposes is exempt from taxation even though it is not used as a place of worship. If this were not so, the third paragraph of 79-201 would be unnecessary, useless and mere surplusage.

It is apparent the trial court treated the facts here presented without regard to the separate provisions of K. S. A. 79-201, in holding that the use of property by a religious society or body must

be as a place of public worship, or as a Sunday School, or as a place where religious instruction is regularly conducted, because it is only in 79-201, *First*, that any reference is made to buildings used exclusively as places of public worship, as public schoolhouses or both, and used exclusively for the accommodation of schools and religious meetings.

The rule applicable to determine whether property is exempt from taxation under Article 11, Section 1 of the Kansas constitution is well summarized by Brewer, J., in *Washburn College v. Comm'rs of Shawnee Co.*, 8 Kan. 344, as follows:

". . . To bring this property within the terms of the section quoted it must be 'used exclusively for literary and educational purposes.' This involves three things, first, that the property is used; second, that it is used for educational purposes; and third, that it is used for no other purpose. . . ." (p. 349.)

On the issue here presented the rule applicable to determine whether the administrative building of the Conference is exempt from taxation under Article 11, Section 1 of the Kansas constitution and K. S. A. 79-201, *Third,* is that the property be actually used for religious, educational, benevolent or charitable purposes, and that it be used for no other purpose, in whole or in part.

The use of the administrative building occupied by the Conference on the facts here presented meets these requirements.

It was not the intention of the framers of our constitution or of our legislators that the law would be interpreted to deny exemption to administrative offices so essential to a well organized and efficient system for providing religious, charitable or educational benefits to the citizens of Kansas. The administrative offices of such institutions, although perhaps a step removed from the performance of the ultimate beneficial act, are no less an integral, essential and absolutely necessary part of the act itself. To hold otherwise would be to ignore the obvious necessity for the administrative function. It would refute the involvement of the executive official in the delivery of socially beneficial services, and would discourage the development of well organized institutions serving society through the most effective management techniques.

The constitution exempts from taxation all property used exclusively for literary, educational, scientific, religious, benevolent and charitable purposes. All of these uses under the law fall in the same category. An administrative building owned by a college,

in which meetings of the faculty and other officials were held, situated across a street from the campus, in the same block with domitories for students, and occupied as a residence by the president and his family, this arrangement being for the benefit of the school, was held to be exempt from taxation on the ground that it was used exclusively for educational purposes in *Kansas Wesleyan Univ. v. Saline County Comm'rs.*, 120 Kan. 496, 243 Pac. 1055.

Apparently the court in the foregoing case found that to deny a tax exemption for an administration building at a college campus because it was not "immediately" or "directly" involved in the teaching process was not realistic and constituted an unreasonable, restrictive interpretation of the law. A strict construction of tax exemption provisions in the constitution and statutes does not warrant an unreasonable construction of such laws.

The Supreme Court of California in *Cedars of Lebanon Hosp. v. County of L. A.*, 35 C. 2d 729, 221 P. 2d 31, was confronted with a tax exemption provision for "property used exclusively for . . . hospital . . . purposes." The court there applied the rule of strict but reasonable construction of exemption laws and held that "property used exclusively for . . . hospital . . . purposes" included any facility incidental to and reasonably necessary for the fulfillment of a complete modern hospital plant, such as a nurses' training school and housing for interns, resident doctors, student nurses, and other employees required to be readily available. The facilities in question were allowed the tax exemption, even though they were not used for the care and treatment of patients, because they were "incidental to and reasonably necessary for the accomplishment of hospital purposes." (p. 736.)

In a large church organization, such as the United Methodist Church in Kansas, having many church congregations and numerous members, some centralization of functions is desirable and necessary to achieve the ultimate aims of the organization—to induce men to live in accordance with moral principles and the will of the Creator. Certainly the promotion of these aims was felt worthy of special encouragement by the state and it granted a tax exemption on property used for such purposes.

The building here in question is used solely and exclusively for the administration of religious activities of the Conference, for general supervision of ministers and churches, for training and

guidance of those engaged in the work of the church and occasionally for holding religious services.

We hasten to add, on the record here presented, there is nothing to show that any part of the use of the building in the administration of the Conference activities embraced political action or activities which would remove the property from its tax exempt status. But if it can be said educational, benevolent and charitable purposes are embraced within the administrative activities of the Conference in using the property for religious purposes, the use of the property for such purposes, on the facts here presented, is likewise exempt from taxation under the constitution.

In conclusion we hold the Conference property here in question is exempt from taxation under Article 11, Section 1 of the Kansas constitution and K. S. A. 79-201, *Third,* because it was actually and regularly used exclusively for religious purposes.

The judgment of the lower court is reversed.

PRICE, C. J., dissenting.

FATZER, J., dissenting: For more than 100 years it has been understood by this court and the Legislature that in order for property in Kansas to be exempt from taxation as being used for religious purposes, the property must be used for public worship and used exclusively for the accommodation of religious meetings. The property in question is used strictly for administrative purposes for general supervision of ministers, supervising their professional careers and counseling and advising officials of educational institutions operated by a church body. As such, it is neither exempt under Article 11, Section 1 of the Constitution of Kansas, nor under K. S. A. 79-201 *First* or *Third.*

Since 1862, the Legislature has defined the term "religious purposes" as used in Article 11, Section 1, as being "[a]ll houses of public worship and the lots on which they are situated," or similar language, and used exclusively for the accommodation of religious meetings. Through experience and tradition, this definition has been understood and practiced by our people over this long period of time, and the fact the word "religious" was added to 79-201 *Third* in 1963, does not enlarge or extend the exemption to property used for administrative offices maintained and operated by a church body.

Time does not permit a full discussion of the intent and purpose of the Legislature in enacting Chapter 456, Section 1, Laws of 1963, and the reader is referred to Proposal No. 46 of the 15th Biennial Report and Recommendations of the Kansas Legislative Council submitted to the 1963 Legislature on December 10, 1962, containing Bill No. 12. This bill was introduced as Senate Bill No. 42 in the 1963 Session to carry out 1962 Proposal No. 46 by the Kansas Legislature. It is clear from this Proposal the Legislature did not intend to alter or enlarge any exemption previously granted to property used exclusively for religious, charitable, or benevolent purposes.

I would affirm the judgment.