Dora Lee **HENDRIX** a/k/a Dora Hendrix, Petitioner,

v.

Alphonso **LARK**, as Warden of the St. Louis Municipal Jail, Respondent.

No. 57392.

Supreme Court of Missouri, En Banc.

July 17, 1972.

**428**

American Civil Liberties Union of Eastern Missouri, Tom P. Mendelson, St. Louis, for petitioner.

Robert W. Van Dillen, City Counselor, John J. Fitzgibbon, Assoc. City Counselor, St. Louis, for respondent.

SEILER, Judge.

This is an original proceeding in habeas corpus by which petitioner, Dora Lee Hendrix, seeks discharge from imprisonment imposed in lieu of fines and costs she was unable to pay because of her indigency.

In March 1971, the City Court of St. Louis sentenced petitioner to serve an aggregate of 270 days in jail and to pay $2,000 in fines and $32 in costs upon her pleas of guilty to four charges of "Soliciting for Prostitution." She completed the jail time portion of the sentences in October, 1971. She was incarcerated in city jail by respondent under the "work off" provision of the city charter [1] because she failed to make immediate payment of the fines and costs. Petitioner failed to pay fines and costs solely because of her indigency. It is conceded that if she had the means she would pay the fines and costs rather than serve them out in jail. On November 2, 1971, this court ordered that petitioner be admitted to bail pending this decision. She was released from jail the following day on a bond procured by the American Civil Liberties Union.

Petitioner contends that her imprisonment to satisfy payment of the fines and costs denies her equal protection of the law in violation of the equal protection clause of the Fourteenth Amendment. Three recent decisions of the United States Supreme Court, Williams v. Illinois, 399 U.S. 235, 90 S.Ct. 2018, 26 L.Ed.2d 586; Morris v. Schoonfield, 399 U.S. 508, 90 S.Ct. 2232, 26 L.Ed.2d 773, and Tate v. Short, 401 U.S. 395, 91 S.Ct. 668, 28 L.Ed.2d 130, support her position. Her incarceration is unlawful under the law there announced, because of failure to give her an alternative of paying by installments. Respondent does not contest this ruling but seeks guidance from this court on its implementation.

In Williams v. Illinois, supra, the court suggested numerous alternatives which may be utilized to avoid imprisonment of indigents for failure to make immediate payment of fines or court costs. One suggestion was to permit payment and costs in installments. We note that Sec. 24, Art. IV of the Charter of the City of St. Louis, as amended April 6, 1971, provides for the payment of fines in installments.[2] St. Louis must provide indigent defendants an opportunity to pay fines in reasonable installments and that portion of Sec. 773.070 of the Revised Code of the city providing the court shall not stay the payment of any fine and calling for its execution, i. e., immediate imprisonment in lieu of payment,

[1]. Section 24, Art. IV of the Charter of the City of St. Louis provides:
" . . . Any one against whom any fine shall have been assessed, failing to pay the same and costs, shall be committed to the workhouse or other place provided therefor, and to such labor as may be provided by ordinance, until such fines and costs shall be fully paid, at the rate of one day's imprisonment for each fifteen dollars of fine or fraction thereof; or such additional amount as may be provided by ordinance, provided that when any one committed under provisions of this section shall fail to perform such labor as required the rate shall be one day's imprisonment for each five dollars; and provided further, that fines may be paid in installments in such manner as may be provided by ordinance."

[2]. The 76th General Assembly also enacted legislation (Senate Bill 227), effective September 29, 1971, which authorizes municipal judges in cities, towns and villages (Sec. 71.220 V.A.M.S.) and magistrates (Sec. 543.270, V.A.M.S.) to provide for the payment of fines on an installment basis.

is unconstitutional under the above decisions.

■ We foresee a substantial possibility that the petitioner will be unable to pay $2,032 in fines and costs even in reasonable installments because petitioner is nineteen, black, female, without any vocational skills and educated only through the eighth grade. She also has a criminal record. What can the city do with petitioner if she consents to make installment payments, makes a good faith effort to pay, but is unable to do so? In Tate v. Short, supra, the court specifically left this question open.[3]

One view is the petitioner, upon an involuntary failure to pay fines and costs on an installment basis, could be imprisoned for sufficient time to satisfy the unpaid balance. See State v. DeBonis, 58 N.J. 182, 276 A.2d 137, which involved municipal fines for motor vehicle violations. The DeBonis case proceeds on the theory of a fine (or imprisonment in lieu thereof) being punishment with the aim of inflicting a "therapeutic sting". The difficulty with this approach is, however, that it ignores the fact that the only ones who receive the "therapeutic sting" in the form of a jail sentence are those who are indigent and cannot pay the fine, and ignores the vast difference in the amount of sting inflicted on the indigent who must work out the fine by serving time in the St. Louis city jail, as compared to the defendant who has funds, pays the fine, and walks away free.

In addition, it is clear the theory on which the DeBonis case proceeds is not available here. The imprisonment under the St. Louis ordinance for failure to pay the fine for the offense of prostitution is not an alternative form of punishment, but is instead in the nature of a collection device, because the ordinance specifically prohibits any stay of payment or execution or probation. The offender either must pay in full at once or go to jail. This is the ultimate in collection devices. It is simple, immediate and inflexible—either pay in full at once or go to jail.

An opposite view is that imprisonment in lieu of payment of fines may be used only when the offender contumaciously refuses to pay. See In Re Antazo, banc, 3 Cal.3d 100, 89 Cal.Rptr. 255, 473 P.2d 999, where upon a guilty plea to arson, petitioner was given a suspended sentence of three years, with release upon probation conditional that he pay a fine of $2,500 or in lieu of payment, serve one day in jail for each $10.00 unpaid. Petitioner was unable to pay and was forthwith imprisoned. The California Supreme Court granted habeas corpus, saying, 89 Cal.Rptr. 1. c. 481, 473 P.2d 1. c. 1007 ". . . Proper use of imprisonment as a coercive mechanism presupposes an ability to pay and a contumacious offender . . . As applied to indigents we fail to see how either the threat or the actuality of imprisonment can force a man who is without funds, to pay a fine . . ."

On the point of using imprisonment as a means of collecting fines, the California court referred to the alternatives mentioned in the Williams case, supra, and said, 89 Cal.Rptr. 1. c. 482, 473 P.2d 1. c. 1008: ". . . Because the state has available to it these alternative methods of collecting fines, we cannot conclude that imprisonment of indigents is necessary to promote this state interest."

On the point about imprisonment for failure to pay the fine being valid because it served a penological interest of the state the court found this "untenable", saying at 89 Cal.Rptr. 1. c. 482, 473 P.2d 1. c. 1008: ". . . It does not follow, however, that the mere equating of the imprisonment of

---

3. "Nor is our decision to be understood as precluding imprisonment as an enforcement method when alternative means are unsuccessful despite the defendant's reasonable efforts to satisfy the fines by those means; the determination of the constitutionality of imprisonment in that circumstance must await the presentation of a concrete case." Tate v. Short, 401 U.S. 395, 400, 91 S.Ct. 668, 672.

the indigent who cannot pay a fine with the cash payment of the nonindigent who can, to the end of promoting the rehabilitation of both classes of offenders, compels the conclusion that the treatment of the former is constitutionally permissible. What we have said above establishes that there are alternative methods by which the state may enforce collection of fines. These same methods simultaneously promote the state's interest in rehabilitating the offender and by requiring compliance on the part of an indigent offender with onerous conditions, they serve to make him aware of his responsibility for his criminal conduct and to encourage him to become a law-abiding citizen."

The court went on to say, 89 Cal.Rptr. l. c. 483, 473 P.2d l. c. 1009, that ". . . our holding is simply that an indigent who would pay his fine if he could, must be given an option comparable to an offender who is not indigent. When the indigent offender refuses to avail himself of such alternatives at the inception, or defaults or otherwise fails to meet the conditions of the particular alternative which is offered without a showing of reasonable excuse, the indigent offender becomes in the eyes of the court exactly the same as the contumacious offender who is not indigent. When either of these conditions obtain the offender's *indigency* ceases to be dispositive and he may, consistently with the mandate of the equal protection clause, be relegated to 'working out' his fine by imprisonment."

The court concluded that, 89 Cal.Rptr. l. c. 483, 473 P.2d l. c. 1009: "Finally, we point out that nothing in today's opinion diminishes the wide scope of authority vested in the sentencing judge in the exercise of his powers . . . [W]e assume that a fine is not imposed on a particular indigent offender with the objective of bringing about his eventual imprisonment for its nonpayment for 'to do so would be to accomplish indirectly as to an indigent that which cannot be done directly.' The sentencing judge's bona fide discretion to impose imprisonment directly in cases where

he deems it appropriate is unaffected by today's decision."

We believe the foregoing view to be the sounder and more realistic. If the petitioner were returned to the city jail after an involuntary failure to meet installment payments, she would be confined solely because of her indigency. It was for this very reason that the initial incarceration was a denial of equal protection of the law. We perceive no substantial difference between imprisonment of an indigent because of an inability to make an immediate payment of fines and costs, and imprisonment of an indigent because of the involuntary failure to make installment payments when permitted the opportunity to do so. Both deny the indigent equal protection of the law. In both the end result is that she is incarcerated because she is poor. The intervening grace period does not change this.

"The poor always ye have with you", declares the Bible, and we know this to be true, even in this country, where the unemployment rate is seldom less than 5% and is much higher among certain groups. So we have to accept the fact there will always be some people who are unable to pay a fine even though willing to do so if they could. The city can determine whether this is true as a fact of any particular defendant and proceed accordingly. The system suggested by the American Bar Association Project on Minimum Standards for Criminal Justice, Standards Relating to Sentencing Alternatives and Procedures, for dealing with non-payment of fines is a sensible one. ". . . [I]n the first place, fines should never be levied unless it is reasonably clear that the defendant is going to be able to pay, either immediately or over time. With respect to defendants who cannot or will not be able to pay, a more appropriate sanction should be chosen. With respect to defendants who appear to be able to pay but ultimately do not, the proposal is that there first should be an inquiry into the reason for nonpayment. Only in the case where such a hearing discloses no

excuse for nonpayment would jail be an appropriate response . . .", Standards with Commentary, Sec. 6.5(b), pp. 288–289.

We also note the city, in its brief, states the installment method of paying fines is recognized in its municipal courts as a part of probation,[4] except that as to the offense here involved Sec. 773.070 of the city's code bars the use of probation. This, of course, the city can change by amending the ordinance if it desires. The city's brief says, ". . . It has been a long settled policy of our courts to allow a defendant time to bring in the money fine, either by continuing a case for a period of time in order that the defendant may raise the money or by placing the defendant on probation to satisfy the money fine or by continuing the fine after the period of probation has been successfully served . . ." It is apparent, therefore, that the installment method of paying fines is practical for St. Louis. It may well be, too, that having to pay a fine in installments is more effective than anything else in preventing future violations of the ordinance.

We order petitioner remanded to the custody of respondent (1) for the limited purpose of taking her immediately to the City Court for a prompt hearing to determine her ability to pay the fines and costs, and (2) if found to be unable to make immediate payment because of indigency, she be released from custody and afforded an opportunity to pay fines and costs in reasonable installments as fixed by the court in light of her ability to pay [5] and (3) if she refuses to accept this opportunity, or after acceptance, fails to make a good faith effort to pay the fines and costs in reasonable installments, she may be incarcerated for sufficient time to satisfy the fines and costs at the rate prescribed by ordinance, but (4) if she, upon a good faith effort, is unable to pay the fines and costs in installments, she cannot lawfully be incarcerated for her failure to pay the fines and costs.[6]

4. According to the city's brief, St. Louis has a highly organized probation and parole system.

5. Petitioner contends that once the city sets up an installment payment program it would ultimately benefit all concerned, as " . . . The costs and problems of housing a great number of short-term prisoners would be abated. Fine collec- .tions, abandoned under the present work-off system, would increase. Welfare dependency necessitated because of the jailing of a support source would be curtailed. In short, a present loss could be a future gain—for all concerned."
According to a note in 22 Vanderbilt L.R. 611, 625, the available evidence on the subject is that " . . . the rate of collection under an installment system is significantly greater than in a system without installment plans . . ."
The same article also says that experience shows installment payment seems to have some reformative effect, with reduction of recidivism, 22 Vanderbilt L.R. 625.

6. Apprehension has been voiced that this could lead to abolition of the use of fines. This is not likely. For one thing, whether it should be or not, fines are too im- portant a source of municipal revenue. In St. Louis, for example, fines and forfeitures in the year 1970 amounted to $1,915,374, Taxation and Revenue in Missouri Municipalities, Missouri Municipal League, June 1971, p. 65. If anything, installment payments would probably increase the revenue.
It is also said this would produce an inverse discrimination: as to offenses punishable only by fine, solvent citizens would have to pay, but the poor would go scot-free.
In the past, as we know, those who could have paid the fine; those who could not have gone to jail in lieu. The result was that while the offense may in terms have been punishable only by fine, in fact it was also punishable by a jail term and there actually was no such thing as an offense punishable only by fine. If the city is convinced that a jail term is required for a particular offense, it may so provide. In that case, both the solvent and the indigent offender would be treated alike.
But if the city decides that it has no interest in a jail sentence and that a fine is sufficient to serve its purpose for a particular offense, then, if the fine cannot be paid promptly and in full, the city

FINCH, C. J., and DONNELLY, MORGAN and BARDGETT, JJ., concur.

HENLEY, J., concurs in separate concurring opinion filed.

HOLMAN, J., concurs in result and concurs in concurring opinion of HENLEY, J.

HENLEY, Judge.

I concur only in that part of the principal opinion which holds that petitioner's incarceration is unlawful under Williams v. Illinois, Morris v. Schoonfield and Tate v. Short.

can use the installment method or conditional probation or parole. Ultimately, it may turn out that an indigent cannot pay, but this need not mean that the indigent can commit the offense with impunity or that he goes scot-free as a matter of course if the city is willing to pursue the various alternatives available. On the contrary, this method of handling the indigent should convince him of just the opposite.